Carter vs. Burnham.

---

CARTER VS. BURNHAM.

AGENCY:

One who managed a farm for another, with authority to purchase mules, implements and supplies for the farm, was not thereby authorized to buy goods for the laborers on the farm; and his representations to that effect were not binding on his principal.

APPEAL from *Ashley* Circuit Court.

Hon. T. F. SORRELLS, Circuit Judge.

*Moore* and *Murphy*, for appellant.

*Carlton* and *McCain*, contra.

HARRISON, J.:

This was a suit by Burnham, the appellee, against Carter, the appellant, to recover the price of goods and merchandise furnished by appellee to Henderson Dean, Nathan Davis and other laborers on appellant's plantation, at, as he alleged, the instance and request of the appellant.

The defendant, in his answer, denied that the goods were furnished at his instance and request.

The jury found for the plaintiff, the sum of $342.22—the amount claimed in his complaint. The defendant moved for a new trial, upon the ground that the verdict was not sustained by the evidence; and his motion being overruled, he excepted, setting out the evidence, and appealed.

The evidence was as follows:

The plaintiff testified. That the defendant, who resides in Georgia, was the owner of a plantation in Ashley County, of which J. W. Segars, in the year 1872, was the superintendent and manager, and resided thereon; that Segars, whilst he was such superintendent and manager, representing himself as the defendant's agent and authorized to make such contracts, applied to the plaintiff, who was a merchant, to furnish certain laborers or hands on the plantation with goods, and charge the same to the defendant, who, he said, would pay for them; that he told Segars, he would not credit the laborers, who were negroes, nor sell to him, except as Carter's agent; but knowing that he was the superintendent and manager of the plantation, and had purchased mules for it, and paid for the same, by drawing a draft; and also knowing him to be a gentleman; upon the faith of his representations, he sold, from time to time during said year, the said laborers the goods mentioned in the bill of particulars, exhibited with his complaint, keeping, at Segars' suggestion, each one's account separate, but charging all to the defendant, and that

Segars made another account with him for the defendant, for plantation supplies. That he called upon the defendant, at his plantation in the fall of 1873, for payment of the accounts. He paid that for plantation supplies; but refused to pay those for goods furnished the laborers, saying that Segars had no authority to make them; though he admitted, he had, to buy mules, farming implements and plantation supplies. Segars died in 1873, and Hawkins, who succeeded him in the management of the plantation, bought goods from him for the hands, and said he had authority from the defendant to do so.

H. C. Lawrence, the clerk of the plaintiff, testified, that the plaintiff refused to sell the goods, only on the defendant's credit, and that Segars made another account with the plaintiff for the plantation which the defendant paid.

The deposition of the defendant was read. He deposed: that Segars was the superintendent and manager of the plantation in 1872, but had no authority from him to purchase goods for the laborers or hands on the plantation, on the contrary, he had expressly instructed him not to do so, and if he had done so, it was without his knowledge or consent, and against his positive instructions, and he had never ratified such dealings; that such had been his instructions to his managers since 1867, and he hadnot since then ratified or paid such accounts. When he employed Segars, he needed stock for the plantation, but there was none in the country for sale, so he directed him, when stock should be brought in, to purchase such as was needed, and to draw on his merchants in New Orleans for the price. Segars, afterwards in pursuance of such directions, purchased some mules for the plantation, and for the price drew a draft on the defendant's merchants, which was paid. By his contract with the laborers, he was to furnish them with provisions and coarse clothing, when informed they needed them; and he always

sent to New Orleans for them. They were to have one-half the crops, and such advances were to be paid out of their shares.

John Stark, a witness for the defendant, testified: That he lived on the plantation in 1872, and was present when the defendant employed Segars, and heard him tell him, not to buy any goods for the hands and have them charged to him; but to let him know what they needed, and he would, if he thought them necessary, order them from New Orleans.

J. P. Hawkins testified for defendant, that he lived on and superintended his plantation in 1873. When defendant employed him, he directed him to buy whatever was actually necessary for the plantation, if he was required to have it before he could advise with him, but specially instructed him, on no account, to buy goods for the hands, saying he preferred to furnish them what was necessary, and to be informed of their wants, when he would order the goods from New Orleans.

Witness did, however, buy some goods for the hands, and had them charged to the defendant, some of which he bought from the plaintiff, knowing at the time he was violating his instructions and transcending his authority.

Henderson Dean testified for the defendant, that he was one of the hands on the plantation in 1872, and that he applied to Segars to get him some goods, but was told by him the only way he could get goods for him was for him to turn over his part of the cotton to the plaintiff, and that, in order to get the goods, he promised to do so. His account with the plaintiff was about $100. In the fall or winter he was at the plaintiff's store, when the plaintiff complained that he had not turned over the cotton as he promised. He told the plaintiff that the cotton was at the gin ready for him, and he could go and get it. The plaintiff told him to turn it over to Segars, and he would take him for the debt. Witness went and got his cotton, three bales, and

hauled it to Segars' house and delivered it to him for the plaintiff. The cotton brought over $250, but Segars died, and he had never received any thing for his cotton.

Nathan Davis also testified for the defendant: That he was present and heard the plaintiff tell the last witness, Henderson Dean, to turn his cotton over to Segars, and that he would take him for the debt. Witness gave the plaintiff a mortgage on his mare for the debt he owed him. The plaintiff afterwards told him if he did not pay his account he would take the mare from him. Witness told him he had no money, and if he was so disposed he might take her, and he sent after and took her away.

The plaintiff then proved by J. W. Harris that he was the administrator of J. W. Segars, and that Segars shipped the cotton turned over to him by Henderson Dean for the plaintiff, with some other cotton, to his commission merchants, John Chaffe, Bro. & Son, in New Orleans. That he (witness) got the account of sale of the Dean cotton, the net proceeds of which were about $243, and on a settlement with Hawkins, the plaintiff's agent, he paid the same over to him, and by his own testimony that the account for which Nathan Davis gave a mortgage on his mare was another and different one from that mentioned in the complaint.

We have been unable to discover any evidence in this case upon which the jury might have predicated the defendant's liability. If, disregarding his positive denial in his deposition of any authority in Segars to make purchases of goods for the hands on the plantation, and the evidence of his explicit instructions against it, we find nothing in the evidence advanced by the plaintiff tending to prove such authority, nor the slightest proof of a subsequent ratification by him of Segars' conduct. The fact that Segars was the manager of the defendant's plantation, and authorized to purchase mules, farming implements and supplies

for it, affords no ground for the inference, that he might also purchase goods for the hands employed on it. Such purchases as these latter were clearly beyond the scope of his employment, and his representations that he possessed such authority could not bind the defendant. 1 Par. on Con., 40, 47; Smith's Merc. Law, 171; *Brooks* v. *Perry*, 23 Ark., 32.

If the proceeds of the cotton Henderson Dean turned over to Segars, to pay his account with the plaintiff, which Segars' administrator paid over to Hawkins, the defendant's agent, passed into the hands of the defendant, he is liable to the plaintiff for the amount Dean owed him, and the same might, upon a proper amendment of the complaint, be recovered in this suit, but the receipt of such proceeds does not amount to a ratification of Segars' conduct.

The judgment of the court below must be reversed, and the cause remanded to it with instructions to grant the defendant a new trial.