## DENNIS *v.* YOUNG.

Opinion delivered January 20, 1908.

EVIDENCE—DECLARATIONS OF AGENT.—One's declarations that he is an agent of another are not of themselves evidence of his agency as against the principal.

Appeal from St. Francis Chancery Court; *Edward D. Robertson,* Chancellor; reversed.

### STATEMENT BY THE COURT.

On the 9th day of September, 1904, Mary Lee Dennis and R. J. Rhodes filed a complaint in the chancery court of St. Francis County against John Young, alleging that they were the owners in common of certain lands particularly described in the complaint, situate in St. Francis County, Arkansas—Mary

Lee Dennis owning two-thirds of said land and R. J. Rhodes owning one-third—and that said lands were divided into separate farms, one known as the Point field, one known as the Going farm, and one as the Ben West farm. Complaint further alleged that Mary Lee Dennis was the owner of a plantation known as the Jones farm, lying in the counties of St. Francis and Cross, township six (6) north, range four (4) east, and that she sold and conveyed the timber to the defendant from the plantation known as the Jones farm. Complaint further alleges that the defendant was cutting the timber from all of the above-described land, which was held in common by plaintiffs, and which was not included in his purchase from Mary Lee Dennis, and that, if he was not restrained, plaintiffs would suffer an irreparable injury to the freehold, and that the defendant was insolvent.

On the same day a temporary restraining order was issued by Hon. H. N. Hutton, Judge of the First Circuit.

On the 12th day of December, 1904, defendant filed an answer, admitting the sale to him by Mary Lee Dennis of the timber on the plantation known as the Jones farm, and alleging that said farm contained in the aggregate about nineteen hundred acres of land, and alleging that said farm includes the land described in the complaint. Defendant alleged that on the 12th day of March, 1904, he purchased from Mary Lee Dennis and her husband, J. W. Dennis, acting as her agent, all the timber located on the plantation known as the Jones farm for the price of $1,400, and files the contract as an exhibit to his answer. Defendant further alleges that said contract and negotiations were not made by the defendant in person with Mary Lee Dennis, but were had through her husband, J. W. Dennis, and E. A. Long, of Forrest City, who acted as her agent. That the said E. A. Long represented himself to be the agent of Mary Lee Dennis, and pointed out the lands, amounting to about 1,900 acres, as aforesaid. That said Long procured said contract to be signed by said Mary Lee Dennis and J. W. Dennis, her husband, and delivered it to J. M. Nichols for the defendant, who delivered it to the defendant a short time afterwards, but defendant did not read it, and did not know until a few

days before the commencement of this suit that the considera-
tion mentioned was only six hundred dollars.

And it is alleged by way of cross-complaint that E. A.
Long, while representing himself to be and acting as the agent
of Mary Lee Dennis in the sale of said timber, conspired with
the plaintiffs, or some of them, to cheat and defraud him of
eight hundred dollars in the making of the contract, and prays
that if, upon a hearing, the court finds that the plaintiff in the
cross-complaint has been cheated and defrauded out of any sum
whatever by the parties to the suit, or either of them, by false
representations of the quantity and number of acres sold to him,
or by collecting a larger sum of money than should have been
paid, he have judgment for said sum.

Defendant filed as an exhibit to his answer and cross bill the
deed conveying the timber by J. W. Dennis and Mary Lee Den-
nis, describing the property as follows: "All of the timber now
located on the plantation known as the 'Jones farm'; same being
situated in St. Francis and Cross counties, Arkansas."

J. W. Dennis for the plaintiff testified: "I am the hus-
band of the plaintiff, Mary Lee Dennis. I reside at Hot
Springs, Arkansas. The negotiations began in this way: The
first thing was that my brother, Dr. E. A. Long, came to Hot
Springs, and told me that I had some timber that belonged to
my wife that I could sell and get a good price for, and that he
had consulted some timber men, and they stated that the price
was a good one, which amounted to $600. Q. Was the matter
closed on the occasion of that visit of his to Hot Springs? A.
No, sir; I told him that I would think it over and let him know
later, but in two days I received a check for $600 and a letter
with deed inclosed in the letter, stating for me to sign said deed
at once. My wife signed that deed also. Q. Does your wife,
Mary Lee Dennis, also own an interest jointly with R. J. Rhodes
in other property in the neighborhood of the Jones farm? Say
the Going farm, the Ben West farm and the Point field? A
Yes, sir; she owns a one-third interest in said land. Q. Was
anything said about the timber on the Point field property, or
the Going farm, or the Ben West farm, in the course of
negotiations, which resulted in your signing the deed for the
timber on the Jones farm? A. No, sir. The transaction was

entirely between me, representing my wife, and Dr. E. A. Long. My wife had nothing to do with the trade except to sign the deed. Nothing had passed between Dr. Long and myself before he came to Hot Springs. I did not know he was coming. Dr. Long is my half brother. Cross-examination: E. A. Long had no authority from me or my wife to sell the timber to John Young, no further than our signing the deed. The first I knew that he was endeavoring to sell the timber to John Young was when he came to John Young a few days before the timber deed was signed. Q. State what he said to you at the time he went to Hot Springs about the sale of this timber; that is, to whom did he say that he wanted you to sell the timber, and at what price? A. He says: 'Your wife has some timber on what is known as the Jones Farm which I can get $600 for, and have talked with some timber men, and they say that it is a good price for the same.' Then I asked him did this include all of my wife's property, and he stated that it only included the Jones farm, which had been cut over two or three times. And I told him that I would consider the matter and let him know later. That is all we talked on the matter, and he returned home. The next thing I heard from him was when he sent me a check for $600 and a timber deed for me and my wife to sign. This occurred a few days after he was in Hot Springs. I identify the timber deed which is shown me as the one signed by myself and wife. And the $600 was all the money I or my wife received for the timber. I don't know anything about how much money E. A. Long got, but John Young told me this morning (May 3d) that he paid $1,400 for the timber. This was the first I heard of it.

John Young, the defendant, testified: Says that he traded with E. A. Long for the timber, and that Long went with him to see the timber, and told him that the land extended from the Big Eddy north, and witness paid Long $1,500. Nichols was the agent of witness in the purchase of the timber. Says that the tract shown him was about two and a half or three miles north and south and about two and a half or three miles wide, and narrower in other places. This was the tract pointed out as the Jones farm. Witness says that he was cutting timber.

close to the Eddy, on the west side of the river, when he was stopped by the injunction in this suit.

E. A. Long testified that he did not act as J. W. Dennis's agent in the sale of the timber, but acted for himself, and simply undertook to get the timber at one price and sell it at an advance.

Other testimony was introduced tending to show that Dr. Long represented himself to be the agent of J. W. Dennis and his wife in selling the timber, and that he was selling the timber on all the lands owned by the plaintiff, Mary Lee Dennis. Dr. Long denied that he made these statements.

The court rendered a decree in which the temporary restraining order in favor of the plaintiff Mary Lee Dennis was dissolved, and the complaint was dismissed for want of equity.

*N. W. Norton,* and *S. H. Mann,* for appellants.

*John Gatling* and *R. J. Williams,* for appellee.

HART, J., (after stating the facts.) The answer admits that the negotiations and contract in question were not had or made with appellant Mary Lee Dennis. Appellee, Young, in his testimony states that the contract was made by him and his agents with Dr. Long representing himself as acting as agent for the plaintiff, Mary Lee Dennis, and her husband. J. W. Dennis says that Dr. Long was not the agent of himself or of his wife; that Dr. Long and himself understood that the lands embraced in ·the timber deed were the lands owned exclusively by his wife, and that the lands owned by her and Rhodes as tenants in common were not intended to be included in the deed, and that this understanding was reached before the deed was executed. Dr. Long says that he was not the agent of Dennis or of his wife, and that he bought the timber for himself and sold at an advance to Young. It is admitted that the plaintiff Mary Lee Dennis only received $600 for the timber, and that that is the consideration recited in the deed. Young paid Dr. Long $1,400 for it. The only testimony as to the agency of Dr. Long was the declaration that he made to Young and others.

It is well settled in this State that the transactions and declarations of a person are not of themselves evidence of his agency as against the principal. *Holland* v. *Rogers,* 33 Ark.

251; *Carter* v. *Burnham,* 31 Ark. 212; *Howcott* v. *Kilbourn,* 44 Ark. 213. Moreover, it is hardly reasonable that Mary Lee Dennis should convey timber on lands, the title to which was in her and another as tenants in common. The court is of the opinion that a clear preponderance of the evidence shows that only the timber on the lands in the complaint owned exclusively by Mary Lee Dennis was embraced in the timber deed.

For the reasons above given, the cause is reversed with directions to the chancery court to enter a decree enjoining appellee from cutting timber from the lands described in the complaint as owned by Mary Lee Dennis and R. J. Rhodes as tenants, and such further decree as may be necessary to settle the rights of the parties hereto not inconsistent with this opinion.

On account of the view of the case had by the chancellor, the issues raised by the cross-complaint were not adjudicated; and as to that branch the cause is remanded for such further proceedings as the chancellor may deem necessary to adjudicate the rights of the parties.