CONTINENTAL CASUALTY COMPANY *v*. ERION.

4-2862

Opinion delivered February 27, 1933.

*Donham & Fulk,* for appellant.
*Dillon & Robinson,* for appellee.

BUTLER, J. Action on an alleged oral contract of insurance; trial and judgment in court below for the plaintiff.

Among the errors assigned and argued here by the appellant is that the trial court erred in refusing to grant its motion for a directed verdict in its favor. The reasons

1124

assigned are: (1) The agent, who it is claimed made the oral contract, was merely a "soliciting agent" and there was no competent substantial evidence that he had apparent authority to bind the appellant by his alleged act; (2) there was no premium paid and no consideration for the contract; and (3) that by the express agreement of plaintiff, if any valid agreement had been made, it ceased to exist before the date of the injury for which liability is claimed.

The trial court submitted to the jury the question of the agent's apparent authority by instructions which are correct if based upon substantial evidence. We discover no essential conflict in the testimony, and as to all the material facts it may be said that the evidence is undisputed.

One Collins was the agent of the appellant to solicit and obtain applications from railway employees for insurance against accident and sickness and to transmit such to the appellant's home office for its acceptance or rejection. This was the extent of his authority, and in the face of the application he was designated as a "soliciting agent" in this way; at the head of the application was a statement that the blanks were to be filled in and signed by "the soliciting agent," and in the blank left for the signature appeared the name of Collins.

On September 8, 1931, Collins solicited and obtained the signature of the appellee, who at that time was a railroad employee, to an application for insurance and told him that the insurance would be effective and begin on that date. The application was received at the home office of the appellant on September 14, 1931, and after some investigation it declined to issue its policy, but wrote Collins on September 18, following that waiver of claim for a certain ailment which it knew appellee at one time suffered be obtained, and stated that, upon the receipt of the signed waiver, "the matter of the policy issue will have our further attention."

In the meantime (September 10th) appellee had been "laid off" by the railroad company and while working

at his home had suffered an injury (September 18th) to his leg which caused him to enter a hospital for treatment some days later, where he was when Collins got appellant's letter. This letter and the unsigned waiver he returned with the notation "applicant is now in the hospital with an injured leg." After receipt of the unsigned waiver and the information relating to appellee's condition no further action was taken and no premium was demanded or received. In this connection it may be stated that accompanying the application was a written instrument signed by the appellee to his employer directing it to pay out of appellee's wages the monthly premiums as they became due. The first premium payment was to be deducted out of his October wages. In this order the following stipulation was made: "I understand and agree as to the duration of my said insurance: (1) that after my policy takes effect the payment of each installment of premium shall continue it in force as stated in "Period Schedule" appearing below, all such periods to be computed successively from the date of the policy; (2) that the failure to pay any installment of premium for any reason whatsoever shall terminate my said policy as of the expiration of the period from the wages of which such installment was to have been paid, except as it may be continued in force by reason of premium previously paid; (3) that if I shall cease to be in the service of the employer to whom this order is directed, this insurance shall terminate at once without notice, except as it may be continued in force by reason of premium previously paid."

On September 29 appellee made proof of his disability and demand for the disability benefit. It appears that at a prior time appellee had a policy with appellant company under which he had received payment for disability benefits, but which afterwards he had allowed to forfeit for failure to pay the monthly premiums. Replying to appellee's demand, appellant called attention to this fact and advised him that there was no insurance outstanding. Appellee wrote in reply that he was not claim-

ing on that policy but on "a new contract" made by Collins, its agent, on September 8th.

In support of his contention, appellee argues (a) that in the correspondence last above mentioned there was an effort to deceive and an indication that Collins had authority to make the agreement that insurance should be in force on and after September 8, and as a further indication of this it is argued that a previous policy bore the same date as the application. These further proved facts are urged as evidence that in making the agreement Collins was acting within the apparent scope of his authority, namely, (b) that in settlement of a previous claim he had received from Collins a draft drawn on appellant for the amount of the claim less a due premium; (c) that he knew what authority Collins had from what he said, and that while in the hospital he had been told by Collins that the insurance was in effect; (d) that the order on the railway company for deduction from wages for insurance premiums had been retained by appellant; (e) that while in the hospital he had been given by Collins the form for his preliminary notice of disability; and (f) principally, that the form of the requisition of appellant to the Commissioner of Insurance of the State of Arkansas and the latter's license issued thereon was sufficient to submit to the jury the question of the apparent authority of Collins to contract for and bind the appellant by the act in question.

Giving to these facts their greatest weight and indulging in every legitimate inference reasonably deducible from them we cannot see anything which would fairly sustain appellee's view.

(A) For the sake of brevity we refrain from setting out the correspondence relative to the present demand of the appellee as we cannot see how any fair interpretation of this correspondence can be construed as an effort on the part of the appellant to deceive him, or how it could have deterred him from asserting whatever rights he might have had, as it has developed he was in possession of the knowledge of all the facts known by

the appellant and of others of which at the time appellant did not know, and could not be expected to have known.

(B) That in the consummation of a previous transaction Collins had drawn a draft upon the appellant for the sum due, as agreed upon by the insurer and the insured, appears to us to have in it no element which would lead a reasonable person to believe that he had authority to do any act which bore no relation to this transaction. Neither could the fact that a previous policy bore the same date as the previous application indicate that in a subsequent transaction Collins would have the authority to make an oral agreement that the insurance should be in force from the date of that application.

(C) What Collins might have said to the appellee regarding the extent of his agency and the binding force of his verbal agreement is unavailing to the appellee, and the evidence of it incompetent under the well-known rule that the extent and nature of an agent's authority to act for and bind the principal cannot be proved by his declaration made in the absence of the party to be affected by them. *Turner* v. *Huff*, 46 Ark. 222; *Dennis* v. *Young*, 85 Ark. 252, 107 S. W. 994.

(D) The order given on the railway company for deduction from wages for insurance premiums was valuable only if and when the policy was written, and, as the application was not accepted, it would be immaterial what became of it and its disposition would have no evidentiary value.

(E) While appellee was in the hospital, he requested Collins to procure for him the form for giving his "preliminary notice." This Collins did—how or where he obtained it was not shown, but however it was obtained there is no showing that, prior to the date of the oral contract or at the time of it, Collins had these forms in his possession, or, if so, that appellee knew of it. Whatever was done after the application could not have influenced the action and belief of the parties at or before the time.

(F) Appellee relies principally on the requisitions for and license issued to Collins as evidence warranting

the submission to the jury of the question of Collins' apparent authority. The requisition and the license are as follows: "This is to certify that the Continental Casualty Company of Hammond, Indiana, has appointed Paul Collins of Little Rock, Arkansas, agent for the transaction of its authorized business of insurance in the State of Arkansas for the term ending March 1, 1932."

"Whereas, the Continental Casualty Company of Hammond, Indiana, is authorized until March 1, 1932, to transact the business of insurance in this State in accordance with license issued to said company,

"Therefore, I, the undersigned, Commissioner of Insurance of the State of Arkansas, in pursuance of instructions received from said company, do hereby license Paul Collins of Little Rock, Arkansas, as the agent of said company in the conduct of its authorized business in this State, untl March 1, 1932, unless his appointment as such be sooner revoked or otherwise terminated."

These were on forms which were not the work of the appellant, but which were prepared in compliance with §§ 6060 and 6062 of subdivision 5 of chapter 98 of Crawford & Moses' Digest, under the title "Insurance," which the insurance companies were required to use. These statutes recognize that there are different classes of agents representing insurance companies, and require that they be regarded as agents of such and render ineffective any provision in the applications or policies to the contrary and are as follows:

"Section 6060. No person shall act as agent or solicitor in this State of any insurance company of another State or foreign government, in any manner whatever relating to risks, until the provisions of this act have been complied with on the part of the company or association, and there has been granted to said company or association, by the Insurance Commissioner, a certificate of authority showing that the company or association is authorized to transact business in this State."

"Section 6062: Companies to which certificates of authority are issued, as provided by § 6060, shall from

time to time certify to the Insurance Commissioner and State Fire Marshal the names of the agents appointed by them to solicit risks, issue policies or receive applications in this State; and no such agent shall transact business until he has procured from the Insurance Commissioner and State Fire Marshal a certificate showing that the company has complied with the requirements of this act, and that the person named in said certificate has been duly appointed its agent.''

Since the requisition and license were not prepared by the appellant company but by the Insurance Commissioner and are based on the above statutes, they can have no greater or other effect than the statute itself. It seems settled that statutes such as those quoted *supra* are not intended to, and do not, have any effect upon the agent's powers to bind the principal, nor do they change the general laws of agency, the powers of an agent being and remaining those only which his principal has expressly or impliedly conferred upon him, to be determined by the applicable principles of the common law relating to principal and agent. *Mutual Life Ins. Co.* v. *Hilton-Green,* 241 U. S. 613, 36 S. Ct. 676; *Sun Ins. Co.* v. *Scott,* 284 U. S. 177, 52 S. Ct. 72; *Eikelberger* v. *Ins. Co. of N. A.,* (1920) 107 Kan. 9, 190 Pac. 611; *Md. Cas. Co.* v. *Seay,* 56 Fed. (2d) 322; *Wood* v. *Fireman's Fire Ins. Co.,* 126 Mass. 316.

Counsel for appellee appear to concede the correctness of the rule stated, but argue that the form and language of the requisition and license extend the real or apparent scope of authority so as to bind the principal for all of the agent's acts, or at least raise the question of fact to be determined by the jury from the language used. The case of *Mass. Bond & Ins. Co.* v. *Vance,* 74 Okla. 261, 180 Pac. 693, 15 A. L. R., page 981, is cited as sustaining this contention. In that case the requisition of the appellant company on the Insurance Commission for agent's license is the one point of similarity of it with the case at bar, and whether or not the applicant knew of it or was acquainted with its language before or at the time his application for insurance was made is not dis-

closed. There, the applicant, a traveling salesman, who habitually carried accident insurance, remembering that his policy was about to expire, was directed to one Evans as an insurance agent and had an interview with him in the office and in the presence of the company's district manager. He told Evans that, unless the insurance would take effect at once, he did not want it. Evans, in the presence of the district manager, assured him that the insurance would take effect immediately, and the application was accordingly signed and a part of the first premium then and there paid and the remainder taken the next morning to the office of the district manager where it was paid to a person in charge of the office who delivered to the applicant the agent's receipt prepared by him and left in the office the preceding evening. There was a delay in the acceptance by the company of the application and of the issuance of the policy and in the interval an injury occurred. Liability was denied, but the premium was retained, and no offer made to return it until after suit was filed and just before the trial. On this evidence a recovery was allowed, and in the course of the opinion upholding the judgment of the court below appears language which indicates that the submission to the jury of the case would have been warranted on said requisition alone. Were we disposed to follow all the implication contained in that opinion in a similar state of case, we do not in the case at bar, if for no other reason, because of the difference in the facts.

In order for any conduct of a principal with respect to the agent, or of the agent, known or which ought to have been known to the principal, to bind the former for the latter's act as done within the apparent scope of the agent's powers, such conduct must have been of that character as would justify the reasonable belief of the agent's authority, and that those dealing with the agent knew of the conduct of the principal or of the agent and relied upon it. The rule is thus stated at page 574, § 213, 2 C. J.: "It is essential to the application of the above general rule (as to apparent authority) that two

important facts be clearly established: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority."

The application of this doctrine to the facts in the instant case makes the form of the requisition and license unavailing to the appellee, for according to his own admission he had no knowledge of the existence of either until after this controversy arose, and therefore could not have been influenced by them in judging what was the apparent scope of the agent's authority.

On an examination of *Gibson* v. *Continental Casualty Co.,* 178 Ark. 1091, 13 S. W. (2d) 621, the principal case from this court relied upon by the appellee, it will be seen that the act from which the agent's power was determined. was performed in the course of the taking of the application. This was the filling in of blank forms furnished by the principal to the agent for that purpose, one of the blank lines being for the date the policy was to become effective. In *New Hampshire Fire Ins. Co.* v. *Walker,* 178 Ark. 319, 11 S. W. (2d) 772, it was held that the fact that an agent of a fire insurance company had authority to write insurance and issue policies at one place was not sufficient to warrant the submission of the apparent authority of that agent to write insurance in another territory and bind his company by an oral contract for insurance.

In *Gibson* v. *Continental Casualty Co., supra,* the court, in differentiating that case from the case of *New Hampshire Fire Ins. Co.* v. *Walker, supra,* said: "There is no· testimony in the instant case that disputes the authority of the agent Henderson to fill the blank, thereby stating the date when the accident policy became effective. We have already said that this action on the part of the agent was within the apparent scope of his author-

ity. Of course, if he had no right to make this, and had not had the blanks for the purpose of filling them up, or if the undisputed proof showed that he had no authority to fill the blanks or to make the contract, then, of course, it would be controlled by the case of *New Hampshire Fire Ins. Co.* v. *Walker, supra.*"

In the case at bar, as already observed, the proof is uncontradicted that Collins had no actual authority to make the oral contract and performed no act before the application from which his authority might be inferred as was the fact in the Gibson case.

In addition it may be said, if a valid contract had been made with railroad employees, such as was the applicant, it could continue only so long as did the employment. This was the express agreement of the appellee which has already been quoted.

Appellee ceased to work for the railroad two days after the application was signed and before the injury was received, and drew all his wages before the insurance company could have collected any premiums. Hence, in any view of the case, there was no valid existing contract, and the court should have directed a verdict for the appellant as requested by it.

The judgment is therefore reversed, and, as the case appears to have been fully developed, it is hereby dismissed.