CENTRAL SURETY & INSURANCE CORPORATION *v.* O. & S. WHOLESALE COMPANY, INC.

4-4509

Opinion delivered February 1, 1937.

524

*Arnold & Arnold,* for appellant.

*Willis B. Smith* and *Ben Carter,* for appellee.

BUTLER, J. The appellee, Wholesale Company, brought suit against appellant, Central Surety & Insurance Corporation, to recover on a verbal contract of fidelity insurance by which it alleged it was insured against the misappropriation of funds by one of its employees. The appellant denied the authority of its local agent, John W. Holman, to make the contract and cross-complained against him praying judgment in the event it should be held liable to the appellee company. Holman answered the cross-complaint, admitting having made the verbal contract and alleging that he had authority to do so. On the issues joined and evidence adduced, the case was submitted to the circuit judge sitting as a jury, who rendered judgment in favor of the appellee Wholesale Company and dismissed appellant's cross-complaint against Holman. The appeal under consideration has been prosecuted from that judgment.

The facts about which there is no dispute may be thus stated: Prior to the transaction involved, and for a period of eight or ten years, John W. Holman had been the local agent of L. B. Leigh & Company at Texarkana. L. B. Leigh & Company, was the general agent of a number of insurance companies doing business in this state, among which was the appellant corporation. At the suggestion of said general agent, appellant issued and delivered to John W. Holman, in February, 1934, a power of attorney and, at the close of that year, this power of attorney was renewed by another identical in terms which was in effect at the time of the transaction involved. The power authorized Holman to execute certain classes of official bonds and bonds required in proceedings in the courts of the state, but did not authorize the execution of fidelity bonds. In § E of the power of attorney provision was made that Holman had no additional authority except that expressly given, and the following § F provided that where any other character of bond should be executed there should be attached to the power specific written authority signed by the president or any home office vice-president of the corporation. It was further provided that no bond of any nature might be executed without a properly completed application therefor (unless waived by the home office), which application, with the corporation's execution report form, must be forwarded to the home office on the same day the bond is executed.

Previous and subsequent to the issuance of the power by appellant corporation, Holman had transacted other business as local agent of L. B. Leigh & Company, the nature. and extent of which is not clearly disclosed by the evidence. It appears, however, that he had authority either to execute casualty bonds or issue "binders" pending action upon the application by which the insurance would be and remain in force until the formal contract was executed.

With the power of attorney, seals were delivered to be attached to such bonds as Holman might execute under the authority given. L. B. Leigh and Company had authority to write fidelity bonds for appellant corpora-

tion and furnished Holman with blank forms upon which application for fidelity bonds should be made, which, when taken, were to be forwarded to L. B. Leigh & Company for its approval and execution.

Holman had never done any insurance business with the appellee company, but had solicited such. In the early part of November, 1935, Roy Waldberg sought employment with appellee company and was told that he would have to procure a fidelity bond and directed him to Holman for that purpose. On November 8, 1935, the applications of Waldberg and the appellee company, for the execution of a fidelity bond by the appellant corporation, were filled out and signed by Waldberg and the company and mailed by Holman to L. B. Leigh & Company without any written advice. The application was received at the office of L. B. Leigh & Company on the 15th of November and on the following day a letter was addressed to Holman by the L. B. Leigh & Company which in effect advised him that the bond would not be written. On the date the application was written, Holman told the appellee company that the insurance would be in effect from that date. Waldberg was put to work as collector and furnished an automobile by the appellee company. He worked a week, collecting several hundred dollars, but failed to report at the end of the week and it was discovered that he had absconded with the money collected and the automobile.

On receipt of the letter of November 16 above referred to, Holman replied, under date of November 21, stating, ''We advised the O. & S. Wholesale Company that we would bind coverage on the above applicant until either accepted or refused by the company. However, the O. & S. Wholesale Co. 'phoned me Sunday morning advising me that this party had skipped the country with the week's collections and also their automobile and your letter declining the bond arrived in here Monday morning too late to have the company relieved from this account. * * *.'' On receipt of this letter, L. B. Leigh & Company wrote Holman that he had no authority to bind the appellant corporation. Holman answered on No-

vember 30, asserting that he had authority to bind a fidelity bond and had been issuing such for ten years and that this was the first time he had ever been advised that he had no authority. He also expressed the opinion that "the declination of this bond will result in the loss of many times over the amount involved to the Central Surety."

To sustain the judgment of the court below, appellee invokes the well-recognized rule that the finding of a trial court is of the same dignity as the verdict of a jury and will be affirmed if based on substantial testimony. The contention of the appellee is that Holman had implied authority to issue the binder. This is based upon the assumption that the testimony of Holman was to the effect that he had been issuing binders on this class of business with the knowledge and consent of L. B. Leigh & Company, general agent, for ten years. Appellee cites American Law Institute's Restatement of the Law of Agency, vol. 1, § 43, as the applicable principle: "(1) Acquiescence by the principal in conduct of an agent whose previously conferred authorization reasonably might include it, indicates that the conduct was authorized; if clearly not included in the authorization, acquiescence in it indicates affirmance." "(2) Acquiescence by the principal in a series of acts by the agent indicates authorization to perform similar acts in the future."

We recognize the correctness of the principle, but cannot agree that the testimony of Holman, when viewed in its entirety, has the effect contended. It was admitted in evidence that Holman had authority from L. B. Leigh & Company to, and did, execute binders on casualty insurance contracts and his testimony relating to his conduct during the time he represented L. B. Leigh & Company failed to distinguish between the binders he was authorized to execute and fidelity bonds. It is true, from some of his general statements, the inference may be drawn that some of the binders he issued were on fidelity contracts, but, when he became specific, he was unable to mention but three instances where fidelity bonds had been issued on applications he had taken for appellant corporation. He admitted that he had been furnished

with no forms for the execution of binders on fidelity bonds, but only application blanks for that character of business. He was evasive as to whether he had ever notified L. B. Leigh & Company in writing that he was issuing binders or that he had ever notified them in any way of such fact. There was an entire lack of frankness and candor throughout his testimony. In answer to a question, he stated that he did not know of any particular case in which he had issued a binder in favor of any applicant and then had notified the L. B. Leigh & Company he had done so. He stated, in effect, that he could get this information from his files. He was then asked: "Q. Mr. Holman, will you see if you can find the file or any letter to L. B. Leigh & Company or Central Surety & Insurance Corporation advising him that you had bound an applicant?" He answered, "I don't know." He was then asked, "Well, will you, or will you not?" and answered, "I will not unless I am instructed to." When asked to give a yes or no answer, he said, "I will not." These questions, in somewhat different form were repeated to him and he consistently refused to make any investigation. Although he admitted signing the indorsement upon the powers of attorney by which he agreed to comply with the limitations and instructions therein contained and which he had had in his possession for approximately two years, he evaded the questions relating to his familiarity with their provisions.

The three fidelity contracts which Holman originated for the appellant corporation were the bonds of J. O. Battle, Hugh C. Malone, and W. F. Meissner. A witness, who had charge of the fidelity bond department of L. B. Leigh & Company, testified that Holman had originated for the appellant corporation no fidelity business other than the cases named and this testimony was not denied. On behalf of appellant the testimony is positive that L. B. Leigh & Company had no knowledge that Holman had issued binders on these bonds and had not been advised by Holman, in writing or otherwise, that he was attempting to do so prior to his letter of November 21, 1935, advising that he had bound the appellant corporation for appellee company. This testimony was

not denied further than by the statement of Holman, when asked if he did not know that the letter of November 21, was the first time L. B. Leigh & Company knew that he had ever attempted to bind any fidelity risk for appellant corporation, answered that he "might have 'phoned them."

As supporting the contention that Holman had been in the habit of executing binders for appellant corporation of which the general agent had knowledge, appellee refers to the fidelity bond covering Hugh C. Malone, secretary and treasurer of a Funeral Benefit Association. The testimony as to this contract is obscure. The application of Malone for a fidelity bond appears in the record. It may be inferred from the testimony that Holman attempted to execute the bond which he sent to the general agent together with the application. It could not have been a fidelity bond as Holman had no blanks for that kind of insurance. He might have attempted to write such a bond on a different form. However that may be, when the application was received, it was accepted and the bond rewritten by L. B. Leigh & Company. We fail to see how this transaction supports the contention of appellee. Another circumstance urged in support of appellee's contention is a letter of Holman to L. B. Leigh & Company of December 4, 1935, referring to a bond issued by the American Bonding Company guaranteeing the fidelity of a Miss Hart in the employ of the Cargile Motor Company. In this letter the information was given that as Miss Sutton was no longer in the employ of the motor company, the bond should be released, and contained the following statement: "In the meantime we are binding the company to cover Miss Elizabeth Hart who has the position formerly held by Miss Sutton. Kindly forward us the necessary papers to complete, dated as of December 1st." To this letter L. B. Leigh & Company replied acknowledging receipt of the application of Miss Hart and inclosing bond for her effective as of December 1. This transaction is the single one, as disclosed by the testimony, where a binder was issued on a fidelity bond by Holman of which the general agent had any knowledge and is irrelevant in that it

relates to an incident occurring subsequent to that involved in the case at bar and with a different company. Its irrelevancy becomes more apparent when it is observed that there is no evidence relating to Holman's authority with reference to the American Bonding Company.

Holman testified that W. M. Apple was the contact man for L. B. Leigh & Company and that witness always dealt with him; that on one occasion, while witness was in Little Rock, Apple asked for more business and, ''I told him we had had a little rumpus here with the fellows and he said, 'Well, John, you run that business— you are your own boss down there.' '' Holman also testified that on another occasion in Texarkana, witness, in the company of Apple, went to the Four States Grocery Company to solicit bonds on the employees; that they ''made a survey of their policies and found a few errors in some and took them with us and made a survey, and the question came up of the binders on employees and they told us right there we could issue a binder and cover all the employees with a fidelity bond.'' We are uncertain just what witness meant by this statement— whether he referred to a statement made by the Four States Grocery Company, or one by himself or Apple. There is no showing that this statement, whatever it might have implied, was made at a time when appellant corporation was represented by Holman or that it had any reference to business to be written through said corporation. It is in evidence that Apple was authorized to issue fidelity bonds and the issuance of the binders mentioned in the above statement might have referred to the act of Apple. At any rate, the testimony is so indefinite as to have no probative value.

As another circumstance to support the contention of Holman, he introduced in evidence a bond upon which appellant was surety for one W. M. Elrod. This bond was given to guarantee the faithful discharge of the duties of Elrod as member of the Board of Public Affairs of the city of Texarkana as prescribed by the statutes of the state and the ordinances of the city of Texarkana and that he make a just and true account of all

monies or property that should come into his hands by reason of his official position. Holman was expressly authorized to execute this character of bond by § C of the power of attorney. This section authorized him to execute bonds required to be filed by public officials appointed or elected, except treasurers of any political subdivision, sheriffs, constables or tax collectors. Therefore, it is apparent that the execution of this bond bears no relation to the question under consideration and has no evidentiary weight.

When we test the testimony above summarized it presents a state of facts to which the principle cited by appellee can have no application. To establish acquiescence by the principal in the conduct of an agent there must be some knowledge on the part of the principal of the conduct in which he acquiesces. Except by the most vague and general statements there is a total absence of testimony to indicate that appellant's general agent ever had any knowledge of the unauthorized act of Holman. His authorization, certainly, is not included in the power of attorney, but that instrument clearly negatives such authority. Moreover, there is but one instance in proof of L. B. Leigh & Company being informed by Holman of the execution of a binder for a liability bond and that is far from a "series of acts," by which acquiescence will be presumed or authority inferred to perform similar acts in the future.

Appellee relies upon the case of *Fireman's Fund Insurance Company* v. *Leftwich,* 192 Ark. 159, 90 S. W. (2d) 497, but that case may be readily distinguished from the case at bar. There the local agent of the general agents of the insurers, for a long period of time with the knowledge and assent of his principal, had been taking applications for policies of fire insurance with the understanding that the insurer would be bound from the date of the application and the policies issued as of that date. The insured had two lots of cotton—one of three hundred bales in a warehouse and two hundred bales at a gin. On the 23rd of October, 1934, application was made for two policies of insurance, one to cover the three hundred bales and another to cover the two hundred bales. The

local agent accepted the risk and agreed to make the contracts immediately effective. The policy on the 300 bales was executed and delivered as of the date contracted. The policy on the 200 bales was issued as of the same date, but before it was delivered a fire destroyed the 200 bales. The insurer defended on the ground that the local agent had no authority to contract that the insurance should be effective as of the date of application. In that case, the testimony was to the effect that numerous contracts had been effected as the one in question through a period of years with the knowledge and acquiescence of the company, and, therefore, the authority of the local agent was implied. There is no such testimony in the instant case and, clearly, the cited case has no application. We conclude, therefore, that the testimony is insufficient to establish such knowledge of, or acquiescence in, the issuance of binders on fidelity bonds on the part of L. B. Leigh & Company as would imply such authority.

It is next contended that if there were no implied authority, the act of issuing the binder in the instant case was within the scope of Holman's apparent authority. This contention is based on the assumption that Holman was a general agent of the appellant corporation. He did, indeed, sustain that relation to the appellant as to that character of business authorized by his power of attorney; but the transaction in the instant case was wholly apart from the authority conferred and had no relation, nor was it incidental in any way, to the powers conferred. As appellant justly contends, with respect to fidelity bonds Holman was a mere soliciting agent and the fact that the appellee company made an application to be forwarded to the general agent of appellant corporation was notice to it of the limited powers of Holman.

The fact that one is a general agent of an insurance company for certain purposes, or within a defined territory, gives him no power to bind his principal by contract clearly without the scope of his powers or outside the territory assigned to him. This court in the case of *New Hampshire Fire Ins. Co.* v. *Walker,* 178 Ark. 319, 11 S. W. (2d) 772, held, citing with approval the case

of *North America Co.* v. *Thornton,* 130 Ala. 222, that where ''one is a general agent of an insurance company for a defined territory gives him no power to bind the company by contracts entered into covering property outside of the territorial limits. The court said (referring to cited cases) that to establish such a doctrine would, in effect, deprive a principal of all power to circumscribe the territory to be covered by the agent, and to deny him the right to confine the exercise of the delegated authority to a particular town or county or state, or even country.''

In a number of cases we have adopted the rule announced in 2 C. J. 573. Among the latest of these cases is *General Motors Acceptance Corporation* v. *Salter,* 172 Ark. 691, 290 S. W. 584. That rule is as follows: ''Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume, or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.''

The cases cited by appellee state the rule substantially as in the authority above quoted. In the case of *Continental Casualty Co.* v. *Erion,* 186 Ark. 1122, 57 S. W. (2d) 1025, we quoted with approval the following from 2 C. J. 574, § 213: ''It is essential to the application of the above general rule (as to apparent authority) that two important facts be clearly established: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.''

The evidence on behalf of the appellee fails to measure up to the requirements of the rule. First, there is no evidence to the effect that Holman was held out to the public as possessing authority to execute binders on

534

fidelity bonds for the appellant corporation, or that he was knowingly permitted to act as having such authority; and second, there is a total lack of any evidence tending to show that the appellee company knew of the former exercise by Holman of authority to bind fidelity contracts, or that it had any reason to believe that he possessed the necessary power. On the contrary, the evidence is undisputed that appellee had never dealt with Holman, nor is there any showing that it knew of the nature of the business transacted by Holman with others. "It is familiar law that one dealing with an agent not clothed with general authority, nor with apparent authority to act, is bound to discover whether the agent had authority to bind his principal. One dealing with such an agent has no right to rely on any presumption that such authority was given the agent nor to trust to any mere assumption of authority by the agent."

"The authority of an agent must be shown by positive proof or by circumstances that justify the inference that the principal has assented to the acts of his agent." *Pierce* v. *Fioretti,* 140 Ark. 306, 215 S. W. 646.

We are of the opinion that the trial court erred in its judgment and that it should have found for the appellant. The judgment is, therefore, reversed, and the case dismissed.