GENERAL CASUALTY COMPANY OF AMERICA *v.* STATE.

5-1645      316 S. W. 2d 704

Opinion delivered October 13, 1958.

*Barrett, Wheatley, Smith & Deacon,* for appellant.

*Bruce Bennett, Atty. General,* and *Bill J. Davis, Asst. Atty. General,* for appellee.

MINOR W. MILLWEE, Associate Justice. Lonnie Neal, James George Reaves and George F. Garner were charged with burglary and grand larceny in Poinsett County in April, 1957 and placed in jail at Harrisburg, Arkansas. At that time John G. Powell of Sikeston, Missouri was an agent of the appellant, General Casualty Company of America, which was subsequently consolidated with the other appellant, General Insurance Company of America, and will be hereafter referred to as "General."

On June 25, 1957 John G. Powell came to Harrisburg and executed bail bonds of $12,500 for each of said

defendants as attorney-in-fact for General as surety on said bonds. Trial of the three defendants was set for September 30, 1957, when Neal and Reaves failed to appear and forfeitures were declared on their bonds and summons was issued and served on General as surety. After a hearing on November 8, 1957, the trial court entered judgment against Neal personally but the matter of the liability of Reaves and General was taken under advisement. On January 28, 1958 judgment was entered for appellee, State of Arkansas, against General as surety on the Neal bond for $12,500, but the forfeiture against Reaves was set aside and General was released and discharged under his bond. Hence this appeal by General in the Neal case and cross-appeal by the State in the Reaves case.

I. *The Direct Appeal.* For reversal of the judgment against it on the Neal bond, General earnestly insists that its agent, John G. Powell, exceeded both the real and apparent scope of his authority in executing the bail bonds in question in Arkansas, and the surety he purportedly represented is not liable thereon. On this point Sheriff C. T. Sullivan testified that when he questioned Powell's authority to execute bonds in Poinsett County, Arkansas in June, 1957, the latter showed him a power of attorney attached to each of the bonds, which reads in part as follows: "KNOW ALL MEN BY THESE PRESENTS: That the GENERAL CASUALTY COMPANY OF AMERICA by ANTONY PANELLA its Vice-President, in pursuance of authority granted by Sections 3 and 4, Article V of the By-Laws of said Company, a copy of which sections is hereto attached, does hereby nominate, constitute and appoint JOHN G. POWELL, Sikeston, Missouri its true and lawful attorney-in-fact, to make, execute, seal and deliver for and on its behalf, and as its act and deed any and all bonds and undertakings, in its business of guaranteeing the fidelity of persons holding places of public or private trust, and in the performances of contracts other than insurance policies, and executing and guaranteeing bonds or other undertakings required or permitted

in all actions or proceedings, or by law required or permitted.

"All such bonds and undertakings as aforesaid to be signed on behalf of the General Casualty Company of America and the corporate seal of the Company affixed thereto by John G. Powell, individually.

"And the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Company, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its Home Office, Seattle, Washington, in their own proper persons.

"IN WITNESS WHEREOF, the said ANTONY PANELLA has hereunto subscribed his name and affixed the Corporate Seal, of the said General Casualty Company of America this 13 day October 1952.

(Signed) Antony Panella
Vice-President."

Following this on the foregoing document was an acknowledgment of the execution of the instrument by Panella in his capacity as Vice President before a notary public of King County, Washington, together with the two sections of the by-laws of the company authorizing him to appoint and designate individuals "to execute on behalf of the Company fidelity and surety bonds and other documents of a similar character . . ."

General's principal offices are in Seattle, Washington with a division office at St. Louis, Missouri. The manager and a claim adjustor of the St. Louis office gave testimony tending to show that a written "Limit of Authority" was issued to Powell in 1952 which provided that before executing bail bonds an agent should first submit the proposal to the Company for approval; that this procedure was not followed by Powell in executing the bonds in question; and that the witnesses first learned of the execution of the bonds in October, 1957. When contacted by representatives of General at that

time Powell showed them copies of execution reports of the bonds in question which he claimed were duly made and forwarded to the St. Louis office in June, 1957. Powell also turned over to them at that time a note for $28,000.00 and deed of trust which were executed by Neal and Reaves and their wives to General on May 24, 1957. While Powell had statewide authority to represent General in Missouri, he held no Arkansas license as an insurance agent.

The applicable principles of agency were well stated by Chief Justice McCulloch in *Three States Lumber Co.* v. *Moore,* 132 Ark. 371, 201 S. W. 508, as follows: "The law is that an agent acting within the apparent scope of his authority, though in violation of specific instructions, may bind his principal in dealing with one who has no notice of the restrictions upon the agent's authority. *Parsel* v. *Barnes,* 25 Ark. 261; *Jacoway* v. *Insurance Co.,* 49 Ark. 320; *Liddell* v. *Sahline,* 55 Ark. 627; *Forrester-Duncan Land Co.* v. *Evatt,* 90 Ark. 301; *Brown* v. *Brown,* 96 Ark. 456.

"An exception to that rule is that where the agency is special, and not general, that is to say, where his authority is to be confined to a single transaction or to a particular act, there is no presumption as to general authority, and one dealing with him must ascertain the extent of his authority. *Liddell* v. *Sahline, supra; Mutual Life Insurance Co.* v. *Reynolds,* 81 Ark. 202; *Jonesboro, Lake City & Eastern Rd. Co.* v. *McClelland,* 104 Ark. 150. But one dealing with an admitted agent has the right to presume, in the absence of notice to the contrary, that he is a general agent clothed with authority coextensive with its apparent scope. *Oak Leaf Mill Co.* v. *Cooper,* 103 Ark. 79."

In support of the contention that the writing of bail bonds in Arkansas was wholly without the apparent scope of Powell's authority, General relies on *New Hampshire Fire Insurance Co.* v. *Walker,* 178 Ark. 319, 11 S. W. 2d 772, and *Central Surety & Insurance Corporation* v. *O. & S. Wholesale Co., Inc.,* 193 Ark. 523, 101

S. W. 2d 167, which hold that the fact that one is an agent of an insurance company for a defined territory gives him no power to bind the company by contracts entered into covering property outside of the territorial limits. The *Walker* case involved the authority of a local agent whose authority was clearly restricted to one city and did not involve the agent's use of a power of attorney furnished by his principal like the one used in the instant case. The second case relied on involved the authority of a local soliciting agent to make a verbal surety contract where the power of attorney under which he acted clearly negatived such authority.

We hold the evidence in the instant case sufficient to sustain the trial court's finding that John G. Powell acted within the apparent scope of his authority as the agent of General in executing the bail bonds. The broad power of attorney issued by General to Powell, and used by him in convincing third parties of his authority to execute the bail bonds in question, contained no territorial limitations on his power to do so. Appellee had no notice of the secret restrictions issued to Powell by General. It had a right to rely on the power of attorney which clearly clothed Powell with apparent authority to execute the bonds.

We do not agree with General's contention that its agent acted without authority, real or apparent, because he was unlicensed and prohibited by our statutes (Ark. Stats., Sec. 66-603 and 66-314) from executing bonds in Arkansas. These statutes prohibit insurance or surety companies from authorizing a non-resident of Arkansas to issue policies on property or persons located in this state. In construing similar statutes we have said they are not intended to, and do not, have any effect upon the agent's power to bind the principal, nor do they change the general laws of agency. See *Continental Casualty Co. v. Erion,* 186 Ark. 1122, 57 S. W. 2d 1025 and *Fireman's Fund Ins. Co. v. Leftwich,* 192 Ark. 159, 90 S. W. 2d 497.

Since we conclude that a valid surety contract was entered into by the parties, we find no merit in the further argument that enforcement of the instant judgment will deprive General of its property without due process of law in violation of the Fifth and Fourteenth Amendments to the U. S. Constitution.

II. *The Cross-Appeal.* The State insists that the trial court erred in granting the motion to set aside the forfeiture of the bond of James George Reaves. Under Ark. Stats. Secs. 43-724 and 43-729 it is within the court's discretion to discharge the forfeiture if the defendant appears and satisfactorily excuses the failure before final adjournment of the court, or the court may remit any portion of the sum specified in the bond if the defendant is surrendered before judgment is entered. At the hearing on November 8, 1957, Reaves appeared and offered testimony tending to show that he was unavoidably confined to a hospital in Texarkana, Arkansas, after undergoing an operation for appendicitis when the forfeiture was declared on his bond on September 30, 1957. There was no abuse of judicial discretion in discharging the forfeiture under this proof.

The judgment is affirmed.