GIBSON *v.* CONTINENTAL CASUALTY COMPANY.

Opinion delivered February 4, 1929.

*Wills & Wills,* for appellant.

*Roscoe R. Lynn,* for appellee.

MEHAFFY, J. This suit was begun in the North Little Rock Municipal Court, where there was a judgment, and appeal taken to the Pulaski Circuit Court. The plaintiff, who is appellant here, alleged that on July 17, 1927, the defendant, appellee here, by its agent, applied to and solicited the plaintiff to take insurance in defendant company with sick and accident indemnity, and plaintiff subscribed for and took the same; that, in consideration therefor, plaintiff executed and delivered to said agent of defendant a deduction order on the Missouri Pacific Railway Company in payment of the premium, and defendant, through its said agent, issued to plaintiff a receipt and contract to the effect that the accident policy would begin July 18, 1927, and the illness insurance would begin August 3, 1927. A copy of the statement referred to is attached to plaintiff's complaint.

It was further alleged that the insurance indemnified plaintiff against loss of time from July 18, 1927, to the extent of $140 a month while confined in the hospital and $70 while unable to work on account of the accident.

Plaintiff alleged that, after said accident insurance became effective on July 30, 1927, and before the policy had been issued and delivered to plaintiff, he was injured while pursuing his usual occupation, by having his hand severely mashed. One of his fingers was mashed off and two others badly bruised. That, on account of said injury, he was confined to the hospital and unable to work for a period of 24 days, and is entitled to pay at the rate of $140 per month. And that, on account of said injury, he had been unable to work up to the time of filing the complaint, and is entitled to pay for this time at the rate of $70 per month, and that there is due him the sum of $224.67. He alleges that he complied with the terms of the insurance contract.

The following is the stipulation entered into by the attorneys:

"It is agreed by the parties that a jury be waived and the case submitted to the court sitting as a jury, upon the record in the municipal court and the following statement of facts:

"R. B. Henderson, a representative of the defendant, solicited the plaintiff for health and accident insurance. On July 17, 1927, the plaintiff signed an application for insurance, marked Exhibit A. Henderson handed the plaintiff a statement on form 2896, marked Exhibit B. The plaintiff at the same time executed and delivered to the agent what is called a deduction order, marked Exhibit C. Henderson testified that he understood that he was authorized to issue the statement just as he did. And plaintiff testified that he understood he was insured against accident from July 18, 1927, the time stated on form 2896, and made Exhibit B as above. The plaintiff was injured July 30, 1927, and made necessary proof of his injury, showing that the same was received in the ordinary performance of his duties. The defendant declined to accept proof, for the reason that the policy had not been issued at the time of the injury. If the policy had been issued it would have been on defendant's form 1174, marked Exhibit D.

"The correspondence shows that the defendant declined to issue the policy because the records of the company apparently indicated that the plaintiff was susceptible of kidney stones. The plaintiff advised R. B. Henderson, the representative of the defendant, that there was a mistake; that he had never had kidney stone, and had never had any insurance with defendant, and had never filed any claim of any kind with defendant other than for the injury here sued for. But, at the request of defendant, he signed a waiver, marked Exhibit E, of any loss resulting directly or indirectly from kidney stone, under date of August 3, 1927.

"It is agreed that the claim herein sued on is for loss of time from accident, and not on account of sickness, and that, if there is any liability against the defendant, it amounts to two hundred ninety-four and

67/100 dollars, plus interest from November 8, 1927, the date of the judgment in the lower court, at 6 per cent. per annum.

"It is further agreed that, if plaintiff is entitled to recover, he is entitled to have $35 attorney's fee taxed up as costs.

(Signed)   "J. F. Wills,
"Attorney for plaintiff.
"Roscoe R. Lynn,
"Attorney for defendant."

The application signed by the plaintiff was also introduced in evidence. It is quite lengthy, and it will not be necessary to set it out in full.

When the application was signed, R. B. Henderson, the representative of the insurance company, thereupon gave plaintiff the following statement on defendant's form No. 2896:

"Continental Casualty Company. General Offices, 910 S. Michigan Avenue, Chicago.

"7-17-27.

"Name:  Will Gibson.

"Occupation:   Coach builder.

"Date application secured:   7-17-27.

"Date accident policy becomes effective:   7-18-27.

"Date illness insurance becomes effective:   8-3-27.

"Principal sum:   $2,000.

"Accident indemnity:   $70.

"Illness indemnity:   $70.

"Premium:   $59.40.

"First payment due from wages earned in month of August.

"No. of installments:   11.

"R. B. Henderson, representative."

Plaintiff thereupon gave Henderson, representative of defendant, the following deduction order:

"Paymaster's Order No.............................

"Agent, notice: To avoid errors and for the benefit of paymaster, write applicant's name here, very plainly, giving correct spelling and first name in full:

"Will Gibson.

"Annual plan: I also agree that, if my wages are paid to me more often than once a month, then each installment, instead of being deducted and paid from a month's wages as herein provided, is to be deducted and paid from that part of the month's wages first payable to me.

"1. The annual premium of my said policy is $............, and I have agreed to pay it in ............ installments. The amount to be deducted from my wages for the month of ........................................., 19............, is $................, and the same amount is to be deducted monthly thereafter until the above number of installments have been paid.

"Monthly plan. 2. The annual premium of my said policy is $59.40, and I have agreed to pay it in monthly installments. The amount to be deducted from my wages for the month of August, 1927, is $9.90, and the amount to be deducted monthly thereafter is $4.95 until further notice. Should I desire to discontinue my policy after it has been maintained in force for at least one year, by reason of said payments, I agree to give the company thirty days' written notice.

"I hereby make this order a part of my application for insurance, and waive for myself and beneficiary under said policy notice of nonpayment of any premium for any reason.

"I understand that no agent of the company has any authority or power to waive or change any of the printed provisions hereof.

"My employer is: Missouri Pacific R. R.

"Division or department head: H. C. Ralls.

"My occupation is: Coach builder.

"My time is kept at: Little Rock.

"I am employed at Little Rock.

"Division: Arkansas, shop or section No. 4477.

"Dated at Little Rock, the 17th day of July, 19............
"Signature: Will Gibson."

A copy of the policy which would have been issued was also introduced in evidence.

On August 3, 1927, three days after plaintiff had been injured, the defendant had him sign the following waiver:

"To induce the Continental Casualty Company to issue (or, if it be already issued, to continue) its policy of the above number, notwithstanding the fact that I have heretofore suffered from kidney stones, I hereby agree that no indemnity of any kind or amount shall be payable to me or to my beneficiary under said policy for loss which results wholly or partly, directly or indirectly, from kidney stones and/or any disease of the urinary tract in any form; this notwithstanding any provision there may be to the contrary in said policy contained. This agreement is executed by me in duplicate, one copy to be attached to the said policy as a part thereof, and the other to be retained by the company.

"Dated at Little Rock, this 3rd day of August, 1927.
(Signed)   "Will Gibson."

"Approved as part of said policy. Continental Casualty Company.
"By H. G. N. Alexander, President."

The court, after considering the evidence mentioned above, held that, as no policy had been issued, there was no contract for the accident insurance.

Motion for a new trial was filed, overruled, exceptions saved, and the case is here on appeal.

The only question involved in this appeal is whether the insurance was in force at the time of the accident, or whether it did not become effective until application was received at the home office, approved, and policy issued. This court has held that an oral contract for temporary insurance until policy is issued is valid, and that an agent with authority to issue policies may make a valid, binding oral contract for temporary insurance.

It is a general rule that an agent with power to make and issue policies may agree orally for temporary insurance. Of course, if he could agree orally for temporary insurance, or insurance to begin at a particular date, he could do the same in writing. 14 R. C. L. 880-881.

The appellee contends that the insurance was not in force and that it was not intended to be in force until the application was received and the policy issued. The agent of appellee, however, filled out and signed appellee's form No. 2896. That stated: "Date application secured: 7-17-27; date accident policy became effective, 7-18-27; date illness insurance became effective: 8-2-27." This was appellee's form.

There is no dispute about Henderson being the agent of appellee and having possession of these forms for the purpose of soliciting insurance, and no question about his having authority to sign these orders; and appellee does not contend that he did not have the right to write in the dates and fill the blanks; they were evidently there for that purpose. And the appellee furnished the agent with these documents, and it was certainly within the apparent scope of his authority to make the contract that he did make. There is nothing in the application or in any of the forms introduced in evidence that in any way contradicts the statement in this form 2896.

Appellee argues that, while it is not necessary for the policy to be delivered before it takes effect, when it contains a provision that it shall take effect immediately upon its issuance, the court cannot say, under the agreed facts in this case, that it can take effect prior to its issuance. And, since in this case it was not issued, it is contended that no contract of insurance was made. This however is contradictory of the statement in form 2896.

It is argued that the intention of form 2896 was merely a receipt or memorandum, and that the transcript does not show what the agent's instructions were in reference to filling out the slips. There is no dispute about the fact that he had the slips and for the purpose

for which they were used. The blanks were there, and it was at least within the apparent scope of the agent's authority to fill these blanks. It would have been an easy matter to have form No. 2896 so printed as to show that it became effective when the policy was issued, and that would have been the most reasonable thing to do if that were a fact. But the very fact that the blank was left there following the words, "date accident policy becomes effective," shows that it would be unreasonable to hold that it was not the intention that these dates be filled by somebody sometime. And we think the most reasonable construction of the instrument is that the agent himself was to fill them. And especially is this true when we keep in mind the rule that the contract is to be construed most strongly against the insurer. In contracts of insurance, like other contracts, the intention of the parties must govern. And it certainly appears that the intention here was for the agent to fill in the blank showing the date when the accident policy became effective.

The policy was not issued, as the testimony shows, because the appellee got the idea somehow that appellant had some ailment. They afterwards learned, however, that they were mistaken about this. It is contended, however, that there is nothing in the stipulation of facts indicating that the agent had any authority other than as a mere soliciting agent, authorized to take applications and forward them to the company for approval, and, as such agent, had no authority to issue a policy. It may be that his agent had no authority to do what he did, but, under the circumstances, the acts of the agent appear to be clearly within the apparent scope of his authority.

Appellee calls attention to the case of *New Hampshire Fire Ins. Co.* v. *Walker, ante,* p. 317, and says that the opinion in that case seems to be decisive of the case at bar. We said in that case: "The undisputed proof shows that the agent had no authority to issue a policy for the appellant on property at Hensley."

1098

There is no testimony in the instant case that disputes the authority of the agent Henderson to fill the blank, thereby stating the date when the accident policy became effective. We have already said that this action on the part of the agent was within the apparent scope of his authority. Of course, if he had no right to make this, and had not had the blanks for the purpose of filling them up, or if the undisputed proof showed that he had no authority to fill the blanks or to make the contract, then, of course, it would be controlled by the case of *New Hampshire Fire Ins. Co.* v. *Walker, supra.*

We also said in the above case that, while the authorities are in conflict, the appellant is bound only by such acts of the agent as are done in the ordinary course of the business in which he is engaged, and that, since he had no authority to write insurance for appellant in this territory, the appellant is not bound, even if a contract was made by Wells. In the instant case, so far as the record shows, the acts of the agent were done in the ordinary course of business in which he was engaged, and he had apparent authority to do the things he did.

It follows that the judgment of the circuit court must be reversed, and remanded for trial, and it is so ordered.

KIRBY and McHANEY, JJ., dissent.