AMERICAN HOSPITAL AND LIFE IN-
SURANCE COMPANY, Appellant,

v.

Bill McQUERRY, Appellee.

No. 15212.

United States Court of Appeals
Eighth Circuit.

April 26, 1955.

J. W. Barron, Little Rock, Ark. (Rose, Meek, House, Barron & Nash, Little Rock, Ark., were with him on the brief), for appellant.

W. A. Eldredge, Jr., Little Rock, Ark. (Pat Mehaffy, and Mehaffy, Smith & Williams, Little Rock, Ark., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

Federal jurisdiction exists in this case by reason of diversity of citizenship and amount involved.

Plaintiff's action was based on the claim set forth in his complaint that a contract of insurance was entered into between the defendant insurance company and himself on August 25, 1953, by which defendant, in consideration of plaintiff's initial quarterly premium of $18.79 then paid to it, insured plaintiff against loss from total accident disability in the sum of $300 per month "beginning with the first day of disability and continuing for life while [he was] totally disabled." Plaintiff alleged that he was injured in an automobile accident on August 28, 1953 (three days after the claimed insurance contract) and as a result of the accident suffered injuries by reason of which he "was and will continue to be totally disabled." He alleged that shortly after his accident on August 28,

1953, he requested the company's agent to forward the necessary claim forms for the filing of his claim,[1] and on the agent's ignoring that request he made a formal written request to the company for such forms. The company wrote plaintiff denying that it had insured him and tendering back the amount of the premium he had paid. Formal demand for payment of the insurance was made and refused. Plaintiff sued for damages for anticipatory breach of the alleged insurance contract based on his life expectancy, to-wit, $49,172.40, together with interest, attorney's fees and costs.

The defendant's answer in the case admitted that "it was informed that plaintiff was involved in an automobile accident on August 28, 1953", but denied that it had entered into any contract insuring him or that plaintiff had suffered total disability or that the company was liable or indebted to him. It paid into court the amount of the premium that had been paid to it by plaintiff.

Upon jury trial of the issues joined, the plaintiff recovered verdict and judgment for the sum of $8,000.00 with interest and costs. The defendant appeals.

There was substantial evidence tending to prove: That in August of 1953 plaintiff was about 53 years old, in good health and engaged in business at Little Rock as a general contractor. He had taken out accident and health insurance with defendant through its Little Rock agent, Mr. Hart D. Green, in May of 1952, but let it lapse for non-payment of premiums. Mr. Green called on him several times to bring about a reinstatement and the insurance was reinstated, but plaintiff let it lapse again. After Mr. Green made more calls upon plaintiff the insurance was again reinstated and again lapsed. It had ceased to be in force on August 25, 1953, and on that date Mr. Green again approached plaintiff to sell him insurance. Plaintiff was then at one of his job sites in Little Rock and there was an hour's conversation between

Mr. Green and himself. Plaintiff indicated he did not believe his work was hazardous but Mr. Green had been "around the work" and had "observed it" for "the last fourteen months" and said to plaintiff, "Your most hazardous duties are driving from one job to another"—"That alone justifies your having insurance—". In response to a suggestion by plaintiff that he would reinstate the old policy instead of taking new insurance, Mr. Green discouraged that course, saying it would take some time to reinstate the lapsed policy. He assured plaintiff that he could give him immediate protection with new and better insurance which would cover him immediately. Plaintiff was persuaded and when the deal was closed and he handed Mr. Green his check for the new insurance Mr. Green told him that "he was covered for accident as of this minute."

In the transaction of August 25, 1953, between Mr. Green and the plaintiff, five printed forms were filled out and exchanged.

1. Mr. Green filled out an "Application For Accident and Sickness Insurance" directed to defendant, while plaintiff looked on over Mr. Green's shoulder. The plaintiff signed it as applicant and Mr. Green witnessed it as "Hart D. Green, Salesman." On the margin of it under the headings in boldface type "To Be Filled In By Branch Office," and (in smaller pica or English type) "Subject to Correction at Home Office", the insurance involved is defined through the filling in of the blanks on the printed form by Mr. Green as follows:

"Prin. Sum $1000" (Meaning that the principal sum was $1000).

"Mo. Acc. Benefit $300" (Meaning that the monthly accident benefit was $300).

"Prem. First $18.79" (Meaning that Renewal $10.79 the first quarterly premium was $18.79 and the renewal premium was $10.79).

---

1. The agent wrote his company that plaintiff "reported this injury immediately and has requested a claim form."

"How Pay Bank Draft Mo." (Meaning that renewal premium was payable monthly by a bank draft against plaintiff for $10.79).

"A A A"

"Plan B P I"

"Effective Date 8-25-53" (Meaning that the described insurance became effective immediately).

2. Mr. Green filled out and delivered a printed form supplied to him by the defendant which bears conspicuously on the front of it in very large boldface type, in juxtaposition to the name of the Company,

BUSINESS AND PROFESSIONAL MEN'S AND WOMEN'S INCOME POLICY

and on the back side [2] of it the benefits payable to plaintiff under the insurance are set forth one by one in large type in the customary language used in insurance policies and the amount of each of

---

2. The back of the Income Policy:

Here Is What This Plan Pays You.

| Total Accident Disability | Per $300.00 Month |
|---|---|

for loss of time from accidental injury, beginning with the first day of disability and continuing for life while you are totally disabled.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| Partial Accident Disability | Per Month $120.00 |
|---|---|

for loss of time from accidental injury, beginning with the first day and continuing for the period of partial disability (limit 3 months).

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| Confining Illness Indemnity | Per $300.00 Month |
|---|---|

for loss of time from illness, beginning on the fourth day and continuing for five years for each illness. (Up to one year full benefits for nonconfining illness).

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Covers Air Travel Full benefits if you are injured while traveling as a fare-paying passenger on a licensed transport plane used as a common carrier.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| Hospital Expense | Per $450.00 Month |
|---|---|

in lieu of monthly indemnity, for as long as 100 days if confined to a hospital.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| Nursing Care | Per $600.00 Month |
|---|---|

in lieu of monthly indemnity, for as long as 100 days if injury requires attention of a registered nurse and no claim for hospital indemnity is made.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| Medical Expense | Up To $25 |
|---|---|

If injury causes no loss of time, you will receive the amount of the physician's bill, up to $25.00 for any one injury.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| Elective Benefits | Liberal Amounts |
|---|---|

Liberal amounts paid for Fractures, Removal, or Dislocation, if you elect, in lieu of all other indemnity.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| Accidental Death or Dismemberment | Both hands . . . . $5,000 |
|---|---|
| | Both feet . . . . . . $5,000 |
| | Both eyes . . . . . $5,000 |
| | One hand . . . . . $2,500 |
| | One foot . . . . . . $2,500 |
| | One eye . . . . . . $1,250 |

Accidental death . . . . . . . . . . . . . . $1,000
(May be increased to $5,000)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Incontestibility After policy is in force continuously for 2 years, it shall be incontestible as to time of origin of illness causing disability commencing hereunder.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

the benefits was filled in by Mr. Green in his handwriting in plaintiff's presence. It is stated on the back of this form under the boldface type heading "Return of Premiums", that all premiums will be returned to the beneficiary "should injuries prove fatal" and, "If for any reason the application is not approved and policy issued this payment is to be refunded."

The following also appears on the back of the form: "This Is Your Receipt. Received of Bill McQuerry the sum of Eighteen & 79/100 Dollars $18.79 with application for policy form B P I for $300 monthly indemnity." This form as filled out in plaintiff's presence and delivered to him was signed "Hart D. Green Authorized Representative."

3. Plaintiff made out his check for $18.79 and delivered it in payment of a quarterly premium.

4. Plaintiff gave Mr. Green an authorization to draw "bank drafts" on him for renewal premiums.

5. Mr. Green gave plaintiff one of his business cards reading in part, "Hart D. Green, Manager, American Hospital and Life Insurance Company." The card and forms show that Mr. Green was held out as defendant's "Manager", "Salesman", and "Authorized Representative", and he was shown to be the managing head of defendant's branch office at Little Rock.

The record on appeal also includes a copy of the form of the policy which was referred to in the Application as A A A —B.P.I., which it was expected would be but which was not issued by defendant.

The above six writings were received in evidence. The plaintiff testified at the trial in his own behalf and Mr. Green was a witness called by the company. Their versions of the transaction of August 25, 1953, did not agree. But that of the plaintiff was that he was induced to buy the insurance by Mr. Green's statements that "he could give him immediate protection" and that "he was covered for accident as of this moment", and by the writing declaring the insurance referred to in the Application and set forth in the Income Policy to be effective on the date of the transaction.

There was substantial evidence that the defendant authorized its agent Mr. Green to make the agreement that the insurance applied for through him should become effective on the date of the application and payment of first premium. The vice president and secretary of the company testified that the company provided and supplied Mr. Green with the blank forms in which Mr. Green was to insert the effective date of the described insurance and that the date he inserted was the date used as the effective date when policies were subsequently issued by the home office. In boldface type the form had printed on it that the branch office of which Mr. Green was the head shall fill in the effective date of the insurance applied for. The company was promptly informed and knew that Mr. Green was filling the date in so as to

Return Of Premiums Should injuries prove fatal, the sum of all premiums paid will be returned to your beneficiary with no deductions for previous claims paid you.

Policy Form BPI Issued to Men and Women, ages 18 to 60. Only persons engaged in nonhazardous occupations are eligible and all applicants must be in good health.

This Is Your Receipt

Received of Bill McQuerry the sum of Eighteen & 79/100 Dollars, $18.79 with application for policy from BPI for $300.00 monthly indemnity. If for any reason the application is not approved and policy issued, this payment is to be refunded:

Hart D. Green,
Authorized Representative.

Date Aug. 25, 1953.

Benefits described above are contingent on recommendation of applicant by authorized company representative and are subject to the terms of the policy issued.

declare that the described insurance went into effect immediately on the date it was applied for and the premium paid. The plaintiff also saw that date written upon the form as the effective date of the insurance he applied for. Mr. Green testified that the company required that when he wrote in the form that the insurance applied for was to be effective on the date of the application he should make a verbal declaration to the applicant in these identical words, to-wit: "if a contract or policy is issued it will be effective on this date", but no such condition was contained in any of the writings. And it was fairly inferable from Mr. Green's testimony that the company authorized him to fill in the date as he did and so as to declare that the insurance would go into effect at once and before there could be any action in respect to it by the home office of the company in Texas. Also in the instant case the company became informed and knew that Mr. Green had written in the effective date of the insurance as soon as it received the application and by acquiescing in Green's action in that regard and proceeding to act on it, it clearly recognized his authority to fill in the blanks as he had done. Although Mr. Green disputed plaintiff's version of what was said about the effective date of the insurance, there can be no doubt on the whole evidence that the time when plaintiff's insurance was to go into effect was a subject matter of the negotiation of August 25, 1953. Mr. Green left it clear that the matter of the date when the insurance should be effective was included in the negotiations of August 25, 1953, and it was open to the jury to believe the plaintiff.

Following the transaction between plaintiff and Mr. Green on August 25, 1953, Mr. Green proceeded to sell plaintiff sickness and accident insurance on Mrs. McQuerry and in that application Mr. Green filled in the same effective date of August 25, 1953. Defendant later issued its policy from its home office on that application for insurance on the wife effective August 25, 1953.

The automobile accident in which plaintiff was involved on August 28, 1953, resulted in his receiving a ruptured intervertebral disc for which he immediately obtained medical care and then hospitalization and was operated on on January 8, 1954. Though he made every effort to carry on his business from the time of the injury, he closed it down prior to a trip he took to Mayo's to verify that an operation was necessary. In his business as a general contractor he was required to climb ladders in order to supervise and direct his construction work. He suffered permanent disability to the extent of 15% of the body as a whole. It will be a year to a year and a half from the date of trial before he reaches his maximum static situation and he is going to be disabled perhaps permanently from climbing ladders.

His doctor was asked the following question:

"Q. Let's assume, Doctor, that there is a man who has identically the same medical history that Mr. McQuerry has; let's assume further that this man was 53 years of age prior to his injury and enjoyed excellent health; that he was engaged in the business of a general contractor; that as a general contractor his duties required that he arise in the morning about five a.m. and from five a.m. in the morning until six or seven in the evening, he was either on his feet supervising the work of his men on a particular job under construction, or driving his automobile or truck from one job to the other; that in supervising the work of his men it was necessary for him to climb ladders, to make observations from scaffolds, to climb upon the rafters of buildings under construction and to climb upon the roofs of buildings under construction in order to ascertain whether or not the work was properly done; that it was necessary for him to walk in and about buildings under construction and to remain constantly upon his feet while supervising the work of his men; that this type of activity was carried on by him for at least six and sometimes seven days a week. Now,

Doctor, assuming those facts to be true, do you have an opinion based on your medical experience, education and study as to whether or not this individual will ever again be able to carry on his business as a general contractor?",

to which the doctor replied that such a person would not be able to carry on so strenuous a schedule because of resulting residual difficulties from his ruptured disc.

The defendant moved for directed verdict at the close of all the evidence and the motion was denied.

On this appeal the insurance company contends for reversal that the court erred: (1) in receiving in evidence the statements ascribed to the agent Green as to the effective date of the insurance and instructing the jury, "if you find that statements were made by Green to the effect that the contract of insurance was effective immediately, such statements may be considered by you in determining whether a contract was made, if you further find from a preponderance of the evidence that Green did have authority to bind the company"; and (2) in overruling the company's motion for directed verdict because no contract of insurance and at least no contract of insurance covering the injuries received by plaintiff was shown by substantial evidence.

■ Decision in this case is controlled by the law of Arkansas as the contract alleged and sued on was an Arkansas contract, and earnest and diligent counsel have cited us to no less than forty decisions of the Supreme Court of that state thought to throw light on the points raised—all of which have been examined. But we think that both of the points presented here, i. e., whether the alleged statements of Mr. Green were admissible and whether there was proof of an insurance contract, are ruled against the insurance company by the decision of the Arkansas Supreme Court in Gibson v. Continental Casualty Co., 178 Ark. 1090, 13 S.W.2d 621, 623.

In that case the agent of the insurance company solicited Gibson for health and accident insurance. Gibson agreed, signed an application and delivered orders on his employer for premiums. The agent filled out a blank furnished him by the company so as to read that the effective date of the accident policy applied for was the day immediately following the date of the application. Gibson was accidentally injured some 12 days afterwards and no policy was ever issued by the home office. He brought suit on the theory that a contract of insurance existed, and the Supreme Court sustained him and reversed the judgment of the trial court dismissing his action.

The Supreme Court said:

"The only question involved in this appeal is whether the insurance was in force at the time of the accident, or, whether it did not become effective until application was received at the home office, approved, and policy issued.

＊    ＊    ＊    ＊    ＊    ＊

"The appellee [insurance company] contends that the insurance was not in force, and that it was not intended to be in force until the application was received and the policy issued. The agent of appellee, however, filled out and signed appellee's form No. 2896. That stated date application secured: 7–17–27; date accident policy became effective: 7–18–27;.

＊    ＊    ＊    ＊    ＊    ＊

"There is no dispute about Henderson being the agent of appellee and having possession of these forms for the purpose of soliciting insurance, and no question about his having authority to sign these orders [upon the employer for premiums]; and appellee does not contend that he did not have the right to write in the dates and fill the blanks; they were evidently there for that purpose. And the appellee furnished the agent with these documents, and it was certainly within

the apparent scope of his authority to make the contract that he did make. There is nothing in the application or in any of the forms introduced in evidence that in any way contradicts the statement in this form 2896.

"Appellee argues that, while it is not necessary for the policy to be delivered before it takes effect, that, when it contains a provision that it shall take effect immediately upon its issuance, the court cannot say, under the agreed facts in this case, that it can take effect prior to its issuance. And since in this case it was not issued, it is contended that no contract of insurance was made. This, however, is contradictory of the statement in form 2896.

"It is argued that the intention of form 2896 was merely a receipt or memorandum, and that the transcript does not show what the agent's instructions were in reference to filling out the slips. There is no dispute about the fact that he had the slips, and for the purpose for which they were used. The blanks were there, and it was at least within the apparent scope of the agent's authority to fill these blanks. It would have been an easy matter to have form No. 2896 so printed as to show that it became effective when the policy was issued, and that would have been the most reasonable thing to do if that were a fact. But the very fact that the blank was left there following the words 'date accident policy becomes effective,' shows that it would be unreasonable to hold that it was not the intention that these dates be filled by somebody some time. And we think the most reasonable construction of the instrument is that the agent himself was to fill them. And especially is this true when we keep in mind the rule that the contract is to be construed most strongly against the insurer.

"In contracts of insurance, like other contracts, the intention of the parties must govern. And it certainly appears that the intention here was for the agent to fill in the blank showing the date when the accident policy became effective.

"The policy was not issued, as the testimony shows, because the appellee got the idea somehow that appellant had some ailment. They afterwards learned, however, that they were mistaken about this. It is contended, however, that there is nothing in the stipulation of facts indicating that the agent had any authority other than as a mere soliciting agent, authorized to take applications and forward them to the company for approval, and as such agent, had no authority to issue a policy.

"It may be that this agent had no authority to do what he did, but under the circumstances, the acts of the agent appear to be clearly within the apparent scope of his authority.

"Appellee calls attention to the case of New Hampshire Fire Ins. Co. v. Walker, 178 Ark. 319, 11 S. W.2d 772, handed down November 12, 1928, and says that the opinion in that case seems to be decisive of the case at bar. We said in that case: 'The undisputed proof shows: that the agent had no authority to issue a policy for the appellant on property at Hensley.'

"There is no testimony in the instant case that disputes the authority of the agent Henderson to fill the blank, thereby stating the date when the accident policy became effective.

"We have already said that this action on the part of the agent was within the apparent scope of his authority. Of course, if he had no right to make this, and had not had the blanks for the purpose of filling them in, or if the undisputed proof

showed that he had no authority to fill the blanks or to make the contract, then, of course, it would be controlled by the case of New Hampshire Fire Ins. Co. v. Walker, supra.

"We also said in the above case that, while the authorities are in conflict, the appellant is bound only by such acts of the agents as are done in the ordinary course of the business in which he is engaged, and that, since he had no authority to write insurance for appellant in this territory, the appellant is not bound, even if a contract was made by Wells."

"In the instant case, so far as the record shows, the acts of the agent were done in the ordinary course of business in which he was engaged, and he had apparent authority to do the things he did."

No Arkansas case has been cited to us nor do we find any reversing or modifying the Gibson case.

It appears on comparison of the situation considered and ruled on by the court in the Gibson case and the facts presented here, that the cases may not be distinguished favorably to the insurance company. On the contrary, the application form in this case in bold-face type *required* the agent Mr. Green to fill in the date when the insurance should go into effect. In the Gibson case the court found the intention that the agent should fill in the effective date from his possession of the blanks with the evident purpose of being filled out by him without the express direction that is present here. The court held that it was certainly within the apparent authority of the agent to make the contract he did make and recognizing that "in contracts of insurance, like other contracts, the intention of the parties must govern," the court declared, "it certainly appears that the intention here was for the agent to fill in the blank". This case is also stronger for the plaintiff in that in this case the document labelled Policy enumerating all the benefits in usual insurance terms was delivered to plaintiff on payment of the premium.

Appellant has argued that the agreement for immediately effective insurance in this case was made tentative and was conditioned upon the approval and issuance of a policy at the home office of the company, but no such conditions were expressed in the writings which evidenced the transaction.

A clause appearing in the Application, "Subject to Correction at Home Office" is stressed. Its meaning in the context is ambiguous, but whatever was intended by it it cannot be construed to mean that the Home Office was at liberty to repudiate its written contract of insurance after the loss insured against had occurred. There are also clauses that the premium payment "is to be refunded" under certain circumstances, and in a certain event "the sum of all premiums will be returned", and "Any premium paid to the company for any period not covered by this policy will be returned", but none of the expressions amounts to imposing a condition upon the fully proved undertaking to insure the plaintiff forthwith. Under the declarations of law by the Arkansas Supreme Court in the Gibson case there was a sufficient showing here that the agent Mr. Green had authority, actual or apparent or both, to contract for the insurance company with plaintiff for immediate insurance coverage and defendant was bound by his statements to that effect. We find no error in receiving the statements of Mr. Green in evidence or in giving the instruction complained of.

The appellant has also argued that there was no meeting of the minds of plaintiff and defendant upon the terms of a contract of insurance in that plaintiff testified that the renewal premiums after the first quarterly premium were to be $10.79 quarterly, whereas the application which was filled out by Mr. Green and signed by plaintiff shows that renewal premiums were to be $10.79 pay-

able monthly.[3] The policy provision (if a policy had been issued) was, that the insurance "may be renewed with the consent of the company", so that if plaintiff had made a mistake as to the amount of renewal premiums it could not have afforded the insurance company a defense to the immediately effective indemnity for which it obligated itself and for which it was paid the premium it required. The insurance was strictly term insurance and the action was not one to reform a contract. The parties were bound by the written provision fixing the renewal premium at $10.79 monthly if the company should consent to enter into a contract of renewal after the expiration of the term for which it agreed to insure and for which it was paid.

It is contended for appellant that there was no evidence to support plaintiff's claim for total disability. Appellant argues that its B.P.I. policy provides one indemnity for total and a different indemnity for partial disability and that the court erred in denying the motion for directed verdict on plaintiff's claim of total disability, and in giving instructions permitting recovery upon that claim.

The B.P.I. policy assumes to distinguish between total disability which "wholly, necessarily and continuously disables and prevents the insured from performing each and every duty pertaining to his occupation" and partial disability which "continuously disables and prevents the insured from performing one or more important duties pertaining to his occupation." The policy provides substantial indemnity for total and very small indemnity for partial disability.

The trial court instructed in accord with settled Arkansas law that total disability (claimed by the plaintiff) does not mean a state of total helplessness, but is sufficiently established if the jury finds that there is any substantial part of the material acts necessary to be done pertaining to the insured's occupation that the insured could not or cannot perform in the usual and customary way. The Supreme Court of Arkansas has approved such a declaration of the law as applicable in a suit on a policy that contained both Total and Partial Disability provisions such as in this case. De Soto Life Ins. Co. v. Jeffett, 210 Ark. 371, 196 S.W.2d 243. We find no error in the ruling on the motion to dismiss in respect to this point or in the instructions given.

Appellant has cited Brancato v. National Reserve Life Ins. Co., 8 Cir., 1929, 35 F.2d 612, Woodrough, D. J., in support of its appeal herein, but this court's decision in that case was rested upon the federal cases. We declared that we could find no departure "in the federal cases" from the "conclusions announced in the early case of Insurance Co. v. Young's Administrator", 23 Wall. 85, 90 U.S. 85, 23 L.Ed. 152, where questions related to those here presented "were elaborately considered by the Supreme Court [of the United States]". Our decision was rendered nearly ten years before Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and it may not be regarded as controlling where, as here, our obligation is to apply the law of Arkansas.

On the contrary, this court will not now substitute its judgment for that of the trial judge respecting doubtful questions of local law but will accept the considered views of the District Judge. Guyer v. Elger, 8 Cir., 216 F.2d 537, loc. cit. 540. It is very clear in this case that defendant was ready and willing to insure the plaintiff against the automobile accident that befell him. The plaintiff was induced to buy such insurance and he paid and the company received more than enough premium to cover it. No injustice is done in requiring the com-

---

**3.** The blank of the Application opposite Renewal says $10.79, and opposite How Pay, says Bank Draft Mo. The abbreviation Mo. is used three times on the same line to mean monthly and it evidently had that same meaning of monthly in specifying how the renewal premiums were payable.

**914**

pany to pay the fair and moderate amount of the judgment and we have found no error in the proceedings requiring reversal. The judgment is

Affirmed.