THE NATIONAL LIFE & ACCIDENT INS. CO. *v.* BROYLES.

4-5269                                          122 S. W. 2d 603

Opinion delivered November 28, 1938.

114

*Roy Gean,* for appellant.
*Rex W. Perkins,* for appellee.

BAKER, J. Appellee, Gretchen Broyles, sued the appellant insurance company upon a $2,000 policy issued by the National Life & Accident Company insuring the life of Wayne C. Broyles who died on September 21, 1937. The policy was issued on the 19th day of April, 1934, and premiums were paid in quarterly installments until the maturity date of the premium falling due on April 19, 1937. That premium was not paid, but the policy did not lapse as of that date for the reason that there was a thirty-one day grace period. Before the grace period had expired, but near the time of its expiration, the mother of the insured paid to one of the agents of the company $2 to extend the time for paying the premium. A few days later, perhaps not much more than a week, if that long, she made a second $2 payment. Her statement is to the effect that the agents of the company told or advised her that by making these payments the policy could be kept in force, as she stated, for two months for each payment of $2. Later in answer to a leading question, suggesting the date, the effect of her testimony was that these two payments extended the policy until September 30th, which was a few days after the death of the insured.

There was a jury trial in this case and the jury rendered a verdict for the appellee, less the quarterly premium in controversy. The verdict and consequent judgment are challenged upon this appeal upon several grounds, the principal one of which is insufficiency of the evidence to support the verdict. It takes an analysis of this testimony to disclose its weakness in the matters which we desire to discuss.

One of the insurance agents is spoken of as a superintendent or supervisor. In the brief and argument on the part of appellee it is not seriously insisted that they had the power or authority to do the things which it is alleged they did do, but it is only argued that the insurance company would be bound, if these agents

were acting within the apparent scope of their authority. It was also urged that if the company held them out as having said power in connection with their representation or agency for their company it is now estopped to urge that there was some limitation or restriction upon their activities inconsistent with such representation.

Appellee, also, argues that since the jury has decided these questions their verdict is final and that this court will not interfere. However sound these matters may appear from an abstract statement of them, that is beside the issues involved here. In the first place, no evidence was offered justifying a submission of the limit or extent of the power or authority of the insurance agents to a jury. It has never been the law in this jurisdiction that the authority of an agent may be proven by a third party who merely makes proof of the agents' statements in that respect. It was so held in *Gould & Co.* v. *Tatum,* 21 Ark. 329, 333.

In the case of *Concordia Fire Ins. Co.* v. *Mitchell,* 122 Ark. 357, 183 S. W. 770, it was held that it is "well settled that the existence of an agency cannot be established by proof of the acts and declarations of the agents." To like effect is the case of *Cotton* v. *Ingram,* 114 Ark. 300, 169 S. W. 967. To the same effect is the holding in *Latham* v. *First Nat. Bank of Ft. Smith,* 92 Ark. 315, 122 S. W. 992. It was there announced: "A principal is not bound by the acts and declarations of an agent beyond the scope of his authority. A person dealing with an agent is bound to ascertain the nature and extent of his authority. No one has the right to trust to the mere presumption of authority, nor to the mere assumption of authority by the agent." (Cases there cited.)

It may be said to be improper to permit a third party to put his interpretation upon what he says the agent said or did, as proof of the agent's authority. The only proof in this case about the extension of time for payment upon the policy, after the expiration of the grace period, is to the effect that one of the agents collected $2, that he went back later and advised Mrs. Broyles that

he thought it was a $1,000 policy and that the money had been sent to the company and that he had been sent back to collect $2 additional since the policy was for $2,000. In regard to this statement, even if we concede, as we are inclined to think we should, that Mrs. Broyles' statement was correct, yet we find that it is beyond dispute that the evidence shows that there can be granted an extension of an additional thirty days, after the grace period, and that grant or extension could not be made by the agents who collected the money. They remitted this money to the Fort Smith office where there was power or authority to make the proper extension.

Since there is no other evidence about the right, or power, or authority to extend the payment this evidence is undisputed. From this undisputed proof, then, the only extension that could have been made was that an additional thirty days was given within which to pay this quarterly premium, the amount of which was $9.64. This would have carried this policy to a date not later than July 19th, and had the additional payment of $5.64 been made after the payment of the $4, the premium to carry the policy until July 19th would have been sufficient. There was no such payment. The policy lapsed.

On July 19th another quarterly premium fell due. It is not urged that there was any payment of this quarterly premium due July 19th, nor that it was extended. At the expiration of the grace period, after that date, which was not later than August 19th, had premium due April 19th been paid, the premium not having been paid the policy would have lapsed. Hence, there were two periods at either of which the policy might have lapsed.

We have this inconsistent proposition presented, that by the act of the agents of the company a payment of $4, which first was stated as being $2 for each two months, would have extended the policy for four months and that this four months began after the expiration of the grace period and the grace period is determined as having expired on June 19th. The policy would have expired on September 19th, which was two days before the death of the policyholder, and even under that contention he would have had no insurance. The question,

however, and the answer of the witness was to the effect that these two $2 payments would have carried the policy until September 30th, and the witness, the beneficiary in the policy, answered, "yes." It was not even argued except by inference from such answer that the insurance agents could extend beyond the two two-months periods. This is the only evidence that is argued to support the verdict. Of course, this is not substantial. In fact, it is so inconsistent with the theory upon which plaintiff, herself, was trying the suit as to be self-contradictory.

It is argued that by payment of the $4 the insured escaped the responsibility of paying premiums and the company did not have a right to collect from the insured the balance of that quarterly premium $5.64, nor the next quarterly premium, maturing in July of $9.64. There is no proof in the entire record that these agents that were out soliciting insurance, sometimes collecting premium, had any power or authority to waive the payment of premiums due the insurance company.

We have attempted to avoid detailed discussion of the evidence offered in this case as the most of it would tend only to prolong the matter without profit. It may be proper, however, to call attention to the fact that the policyholder in this case had at one time been an agent for this same company. He knew its method of doing business. His uncle was also an agent for the company and he testified he had seen the policyholder a short time before he left the community to make a trip to California, that he discussed with him the proposition that he should pay his insurance premiums. The policyholder had suggested that he thought before he went away on his trip he would dispose of some property or holdings and pay up his premium. He thoroughly appreciated the fact that it had lapsed.

To sustain this verdict and judgment under the facts and circumstances above stated it seems that we would have to so amend the policy as to make it one that was nonforfeitable on account of the failure to pay premiums and as one containing such provisions and conditions that the insured, himself, could not even voluntarily refuse to pay premiums and cause it to lapse.

The express provisions of the policy are to the effect that all premiums must be paid either at the home office of the company or to an authorized agent and only upon delivery of a receipt signed by the president, vice president, or secretary and countersigned by a representative of the company.

This provision contradicts the theory that soliciting and collecting agents may waive the premiums or that they may so extend the date of the payment of premiums as to amount to waivers. There is no proof that such agents had any authority to issue policies, pass upon applications or waive conditions in policies. *National Life & Accident Ins. Co.* v. *Davison,* 187 Ark. 153, 58 S. W. 2d 691; *Gordon* v. *New York Life Ins. Co.,* 187 Ark. 515, 60 S. W. 2d 907.

Such agents must be treated as special agents or as having limited authority. In such cases, those who deal with such agents must determine at their own risk the extent of the agents' authority.

The court erred in not directing a verdict because there is no evidence of any kind showing the power or authority or that the conduct of agents, even if they attempted to do what is charged, that is, to extend the policy without payment of premiums, was sufficient to prevent a lapse of the policy. The proof is to the effect that the indebtedness against this policy was such under the automatic nonforfeitable provision of the policy at the time of the lapse as to leave only $1.65 of the cash or surrender value. This amount according to the policy was to be used to purchase paid-up insurance. This paid-up insurance amounted to $5 payable to the insured at the age of 85 years or to his beneficiary at his death. The company admits this liability under the provisions of the policy, the conditions of which are not in any manner in dispute and which fixes and determines this method of settlement in case of lapse.

There will, therefore, be a reversal of the judgment rendered and a judgment here for $5 for the beneficiary. This amount was tendered and the insurance company will be permitted to collect costs accruing from and after

the date of the tender, costs, if any, prior to that date will be paid by the insurance company.