H. P. JACKSON, Billie Phillips and Claude Phillips, Plaintiffs,

v.

M. F. A. MUTUAL INSURANCE COMPANY, a corporation, Defendant.

Civ. A. No. 432.

United States District Court
W. D. Arkansas,
Harrison Division.

Sept. 19, 1958.

Rehearing Granted Oct. 2, 1958.

Allen H. Wilson, Berryville, Ark., for plaintiffs.

Crouch, Jones & Blair, Springdale, Ark., for defendant.

**JOHN E. MILLER**, District Judge.

### Statement

This case was tried to the court without the intervention of a jury on September 11, 1958, and the court, having considered all of the pleadings, testimony, and exhibits thereto, now makes and files its formal Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact

**1.**

The plaintiffs were at the commencement of this action citizens of Arkansas residing in the Harrison Division of the Western District of Arkansas.

The defendant is a corporation organized under the laws of the State of Missouri and authorized to do business in the State of Arkansas as an insurance company.

The action was removed to this court on May 13, 1958, and the amount in controversy, exclusive of interest and costs, is in excess of $3,000.

**2.**

On March 15, 1955, the defendant issued its fire insurance policy covering property shown to be located at 212 Cherry Street in Berryville, Arkansas, to Lloyd and Berry Jean Jennings. Through endorsement the policy vested in the plaintiffs, who had acquired the insured property. The policy was renewed on March 15, 1957, for an additional year. On December 3, 1957, while the policy was in full force and effect, the property burned and was totally destroyed. The policy contained the following provision:

> "Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured. * * *."

It also contained a provision, set out under the title of "Waiver provisions", that no permission or waiver affecting the policy should be valid unless expressed in writing "added thereto."

**3.**

The policy showed the insured building was to be used as a poultry house, and it was so occupied until March 27, 1957. Sometime prior to this date the plaintiffs had completed negotiations with one John Holland to lease the premises to him for use as a pallet manufacturing factory, beginning on March 27, 1957. On March 26, the day before the lessee was entitled to possession, H. P. Jackson, one of the plaintiffs, went to the defendant's agent, Eugene Pinkley, to pay the renewal premium and advised him of the change to be made. Jackson knew that there might be an increase in the premium. Pinkley, however, advised Jackson that if anything came up at a later date, he, Pinkley, would "take care of it." Under the terms of the lease Holland took possession and engaged in a manufacturing business which continued until the fire. This operation increased the hazard from the

point of view of fire protection. The defendant received no notice of the increased hazard, other than the notice given to Pinkley. Pinkley never notified the defendant.

### 4.

Mr. Holland began business at this location, and applied to Mr. Ray O. Beck, another insurance agent in Berryville, not connected in any way with the defendant, for insurance on the machinery and other equipment installed by him in the building and used in the operation of the pallet manufacturing business. Mr. Beck issued a binder covering the contents of the building, and requested a re-rating from the Arkansas Inspection and Rating Bureau on the contents. This is customary procedure. The building and contents were inspected by the Rating Bureau after Holland occupied the premises, and about July 1, 1957, a new rate for the premises and contents was promulgated. This was done by mailing a notice, not only to Mr. Beck, but also to other agents in the same locality whose companies were either subscribers to or members of the Rating Bureau. The defendant is a "subscriber", and its agent, Pinkley, received a notice of the new rate on the building as did several other agents in Berryville. The Rating Bureau does not ordinarily send copies of this notice to the home office of its subscribers, but only to the agents in the locality affected. The new rate established by the Rating Bureau was $3.81 per hundred dollars on both the building and contents. The rate previously in force and the rate shown on the policy was $1.25 per hundred.

The policy showed the insured property as being located at 212 Cherry Street in Berryville. The re-rating notice received by the defendant's agent was headed "Jackson St., N.S." in accordance with a change that had recently been made in certain streets of Berryville. It contained various figures and letters identifiable by insurance agents and also contained on the third line the following:

"*1470 R504–20 Phillips-Jackson Pallet & Furn Stock Mfg. * *."

When Pinkley received this notice, he noted the Jackson Street address and filed the card without taking action on re-rating because of the different address in the policy. However, as shown, the card also contained the names of his policyholders.

Pinkley read in a newspaper published at Berryville, Arkansas, of the change in the occupancy of the building. He knew that Mr. Holland was conducting a pallet manufacturing business in the building and likewise knew that the policy provided that the policy of insurance, as issued, covered the one-story, composition roof, frame building occupied as a poultry house, situated at 212 Cherry Street, Berryville, Carroll County, Arkansas. He attempted to justify his failure "to take care of it" by testifying that when he received the notice that the premium rate on a building occupied by a pallet manufacturing business had been changed, he did not associate the building covered by the insurance policy issued by his company with a building situated on "Jackson Street, N.S." He had, prior to the receipt of the notice of the change in the rate, been advised by one of the plaintiffs that the building would be occupied by the pallet manufacturing company, and, being a resident of a small town, he evidently knew when he received the re-rating that Phillips & Jackson, the insureds and owners of the building, had permitted a change in the occupancy, or, in other words, that the negotiations with Mr. Holland for the installation of a pallet factory had been completed. Yet, he took no action, and did not notify the defendant company of the change in occupancy or the change in the premium rate. Neither did he discuss the matter with any one of the plaintiffs, and later, after the building had been destroyed, when the plaintiff, Claude Phillips, went to his office to inquire why the insurance had not been paid, Mr. Pinkley, in the presence of the adjuster, stated that he had failed to notify his company of the change in the

occupancy. Pinkley is no longer associated with the defendant.

### 5.

Pinkley's contract with the defendant provided that "The Agent shall not make, alter or discharge any contract of insurance without the written consent and authorization of the Company." It further provided that the defendant company should have the right to reject any application of insurance and that the company retained no right to direct the work, hours or methods of work of Pinkley. Pinkley was not authorized to sign or countersign policies. If Pinkley were successful in soliciting insurance, he would issue a binder, then mail the policy to the defendant's home office at Columbia, Missouri, for approval. If it was approved, coverage would be afforded and the policy returned to Pinkley for delivery to the insured. It was the duty of Pinkley to forward to the defendant's home office any pertinent information relative to the risks insured, and from time to time he did so. The defendant company does not insure furniture factories or risks of the type involved after Holland took over the insured premises. The defendant in fact would have declined that risk had it had actual knowledge of the change. At no time before or since suit was filed did the defendant tender any unearned premiums to the plaintiffs.

### 6.

As heretofore stated in Finding of Fact No. 2, the original policy had been issued to former owners of the building and the plaintiffs never had possession of the original policy and only had in their possession renewal certificates. Thus the plaintiffs were not advised of the provisions of the policy and relied entirely upon the agent of the defendant to furnish them a valid insurance policy.

### Conclusions of Law

### 1.

The court has jurisdiction of the parties and the subject matter of this action.

### 2.

The change in the use and occupancy of the building insured was a substantial increase in the risk.

### 3.

The burden is upon the plaintiffs to establish that the agent had real or apparent authority to bind his principal. American National Ins. Co. v. Laird, Ark.1958, 311 S.W.2d 313; Jackson v. Farmers Union Mutual Ins. Co., Ark.1957, 306 S.W.2d 693; American Ins. Co. v. Hornbarger, 85 Ark. 337, 108 S.W. 213; American Ins. Co. v. Hampton, 1890, 54 Ark. 75, 14 S.W. 1092. Before an insured may rely upon apparent authority of an agent, it must appear that the principal knowingly permitted the agent to act as having the authority, and further that a person dealing with the agent acting in good faith would have reason to believe, and did in fact believe, that the agent possessed the necessary authority. Central Surety & Ins. Corp. v. O. & S. Wholesale Co., Inc., 1937, 193 Ark. 523, 101 S.W.2d 167, and cases there cited. Where the policy itself negates the authority of an agent to waive its provisions, those who deal with such agents must determine at their own risk the extent of the agent's authority. See National Life & Accident Ins. Co. v. Broyles, 1930, 197 Ark. 113, 122 S.W.2d 603, and cases cited; National Union Fire Ins. Co. v. School District No. 55, 1916, 122 Ark. 179, 182 S.W. 547, L.R.A.1916D, 238.

The plaintiffs failed to sustain the burden of showing real or apparent authority upon the part of the defendant's agent, Pinkley, to waive the policy provisions or to accept notice on behalf of the company.

### 4.

The knowledge of a soliciting agent is not imputed to the principal. Sadler v. Fireman's Fund Ins. Co., 1932, 185 Ark. 480, 47 S.W.2d 1086. Where an agent has authority to solicit insurance, receive and write applications for insurance, and forward them to a gen-

eral agent or home office for approval, to deliver the approved policy and collect the premium, he is a soliciting agent only, and proof of such facts does not show any authority on his part to waive the provisions of the policy. See American Ins. Co. v. Hampton, 1890, 54 Ark. 75, 14 S.W. 1092; Inter-Southern Life Ins. Co. v. Holzhauer, 1928, 177 Ark. 927, at page 935, 9 S.W.2d 26; American Ins. Co. v. Hornbarger, 1908, 85 Ark. 337, 108 S.W. 213. Pinkley, the defendant's agent, was a soliciting agent not empowered to waive policy provisions, and notice to him of policy violations cannot be imputed to the defendant.

5.

█ The policy and rights therein were forfeited from the time of the change in use and occupancy which increased the hazard without notice to or waiver by the defendant. The plaintiffs are, therefore, entitled to recover nothing of and from the defendant, and the plaintiffs' complaint should be dismissed.

A judgment in accordance with the above should be entered.