**H. P. JACKSON, Billie Phillips and Claude Phillips, Plaintiffs,**

**v.**

**M.F.A. MUTUAL INSURANCE COMPA-NY, a corporation, Defendant.**

**Civ. A. No. 432.**

United States District Court
W. D. Arkansas,
Harrison Division.

Dec. 1, 1958.

Allen Wilson, Berryville, Ark., for plaintiffs.

Crouch, Jones & Blair, Springdale, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This is a suit on a policy of fire insurance originally tried to the court without a jury on September 11, 1958. On September 19, 1958, the court filed its written findings of fact and conclusions of law, Jackson v. M. F. A. Mutual Ins. Co., D.C.W.D. Ark., 165 F.Supp. 388, and in accordance therewith entered judgment on the same day in favor of the defendant and dismissed the plaintiffs' complaint. Within the time prescribed the plaintiffs filed their motion for a rehearing and partial new trial pursuant to Rule 59(a), F.R.Civ.P., 28 U.S.C.A., and

on October 2, 1958, the court granted that motion and opened the judgment previously entered in order to reconsider its findings of fact and conclusions of law.

On November 24, 1958, a further hearing was held, and additional briefs have been submitted by the parties in support of their respective contentions. At the hearing the depositions of Russell Shaw, manager of the fire division of defendant, and Eugene Pinkley, the agent of defendant at all times material herein, taken by stipulation of the parties were introduced and further oral testimony taken. The defendant urged a number of objections to various questions and answers in the depositions so admitted, and it appears that many of those objections are well taken. However, the court does not find the testimony contained in the depositions relevant to its decision, and accordingly does not consider any of the testimony in the depositions in reaching its conclusion. It is, therefore, unnecessary to pass upon the objections.

For convenience some of the facts set forth in the original findings by the court in Jackson v. M. F. A. Mutual Ins. Co., supra, are summarized here together with additional facts established at the second hearing.

The plaintiffs were owners of certain real property in Berryville, Arkansas, which was destroyed by fire on December 3, 1957. Prior to that time they had acquired a policy of fire insurance with the defendant insurance company which was renewable on March 15, 1957. The renewal premium was not actually paid until March 26, 1957, but when paid the defendant issued its receipt for the premium and issued its renewal certificate on April 11, 1957, effective March 15, 1957, to March 15, 1958.

The policy provided that the insurance would be suspended "while the hazard is increased by any means within the control or knowledge of the insured." During the month of March 1957 the plaintiffs completed negotiations with one John Holland to lease the insured premises to him for use as a pallet manufac-

turer and Holland was to take possession on March 27, 1957. The building originally had been insured as a poultry house, and the change in occupancy increased the fire hazard of the premises.

On March 26, 1957, the plaintiff, H. P. Jackson, paid the renewal premium to Eugene Pinkley, the defendant's agent in Berryville, Arkansas. At that time he advised Pinkley of the change in occupancy which was to take place the following day. Jackson testified at the original hearing as follows:

"Q. Was any statement or confession conveyed to Mr. Pinkley at that time? A. Yes, sir.

"Q. What did you tell him? A. I told Mr. Pinkley that the property was being changed from a brooder house to a pallet manufacturing concern.

"Q. What did Mr. Pinkley tell you? A. The conversation was— I told him from the standpoint of insurance and he told me if anything came up at a later date that he would take care of it.

"Q. And you relied on what Mr. Pinkley told you? A. Yes, sir.

"Q. Was a contract in effect at that time that you were leasing the place? A. Yes, sir.

"Q. Did you so inform the agent? A. Yes, sir.

"Q. And he agreed to make any changes that became necessary? A. He told me he would take care of any changes that came up."

Although Pinkley denies making the statement attributed to him, he states that he remembers little of this conversation, but the court finds as a matter of fact that Pinkley made the statements as quoted by H. P. Jackson. Pinkley never at any time notified the defendant insurance company of the change in occupancy, and the company had no actual knowledge of the increase in hazard.

Shortly after the renewal premium was paid by Jackson, he received in the mail a premium receipt which showed the coverages and amounts charged therefor on the front side, and on the back side contained the following language:

"M F A Mutual Insurance Company is offering a free service of personal insurance analysis to all its policyholders. If you would like to know if your insurance program is in balance, ask your M F A Mutual Agent. He is an authorized insurance consultant and is qualified to advise you on your insurance needs. See Him Today."   •

Thereafter the change in occupancy was fully completed, and the plaintiffs' tenant occupied the premises and conducted the business of a manufacturing company which substantially increased the fire hazard.

On December 3, 1957, the premises burned, and the defendant, relying on the provision in its policy suspending insurance while the hazard was increased, denied liability.

■ There is no question but that the defendant's agent, Pinkley, was a mere soliciting agent. His contract with the defendant provided that:

"The Agent shall not make, alter or discharge any contract of insurance without the written consent and authorization of the company."

He was authorized only to solicit insurance, receive and forward applications, collect premiums, deliver policies when issued, and execute temporary binders.

In Holland v. Interstate Fire Ins. Co., Ark., 316 S.W.2d 707, 709, the court said:

"The appellants contend that Davidson was a general agent for the company, while the appellee insists that he was merely a soliciting agent. The familiar distinction between the two types of agencies involves a question of substance rather than one of name only. A general agent is ordinarily authorized to accept risks, to agree upon the terms of insurance contracts, to issue and renew policies and to

change or modify the terms of existing contracts. Appleman on Insurance, § 8696. On the other hand a soliciting agent is ordinarily authorized to sell insurance, to receive applications and forward them to the company or its general agent, to deliver the policies when issued, and to collect premiums. American Ins. Co. v. Hampton, 54 Ark. 75, 14 S.W. 1092; German-American Ins. Co. v. Humphrey, 62 Ark. 348, 35 S.W. 428, 54 Am.St.Rep. 297; American Ins. Co. v. Hornbarger, 85 Ark. 337, 108 S.W. 213."

In its original conclusions of law the court held that the knowledge of a soliciting agent is not imputed to the principal. Sadler v. Fireman's Fund Ins. Co., 1932, 185 Ark. 480, 47 S.W.2d 1086.

The policy itself provided that insurance would be suspended while the hazard was increased unless written permission for the change in occupancy was attached to the policy. No written permission was ever executed or attached. Accordingly the court originally held that the policy itself negatived any authority of the local agent to waive its provisions. National Life & Accident Ins. Co. v. Broyles, 1930, 197 Ark. 113, 122 S.W.2d 603; National Union Fire Ins. Co. v. School District No. 55, 1916, 122 Ark. 179, 182 S.W. 547, L.R.A.1916D, 238. Therefore, there could be under those circumstances neither real nor apparent authority on the part of the agent to waive the suspension clause with respect to an increased hazard. These conclusions of law are correct as to the facts as originally presented and argued, but the plaintiffs now contend that their case was not based upon a theory of waiver, and introduce new evidence to support their contentions.

The language of the agent, Pinkley, in advising the plaintiff, Jackson, that he would "take care of" any changes that might come up is not necessarily limited to construction as an attempted waiver of the policy provision. That language is also susceptible to interpretation as a representation that the proposed change in use and occupancy of the insured premises did not increase the hazard. While a purported waiver by the agent would be clearly outside the scope of his authority and equally outside the scope of his apparent authority because the policy provisions themselves negate such an idea, a representation as to a matter of fact outside the policy may be within the soliciting agent's implied or apparent authority, and if so, the defendant company may be bound thereby.

■■ If the representation made by the agent is merely his interpretation of law or his opinion, or his interpretation of policy language, it does not bind his principal. See Miller v. Illinois Bankers' Life Ass'n, 1919, 138 Ark. 442, at page 448, 212 S.W. 310, at page 312, 7 A.L.R. 378; Unionaid Life Ins. Co. v. Crutchfield, 1930, 182 Ark. 825, at page 829, 32 S.W.2d 806, at page 807; Annotation, 136 A.L.R. 5, 10. The representation by the agent in this instance, however, does not purport to interpret the policy language or to render a legal opinion as to what is required by the policy. Instead the representation of the agent was in effect a statement that the proposed change in occupancy did not affect the hazard to the premises. This is the effect of Pinkley's language that he would "take care of" anything which might come up, leaving the clear implication that no action was required at the time. Since the representation was not merely an opinion or interpretation of the policy, but one of actuarially determinable fact, it is binding upon the defendant if it was made within the scope of the agent's actual, implied, or apparent authority.

■ The premium receipt introduced at the second hearing indicates the extent of authority granted by the defendant company to its agent. It refers to its agent as "an authorized insurance consultant" who is "qualified to advise you on your insurance needs," and ends with an invitation to see the agent immediately. Of course, the mere fact that the company solicits business through an agent indicates that he is qualified

to some extent to advise on insurance needs, but the invitation contained in the premium receipt is a specific announcement, at least to policyholders, that the agent's advice on insurance matters not only should be sought but may be accepted with the full support of the insurance company itself. In holding out an agent in this manner, it would probably be safe to say that the defendant company, in effect, granted him actual authority to make representations of fact on insurance matters not in conflict with policy terms themselves. In any event, however, this language certainly gives to the soliciting agent the apparent authority to make the kind of representation made here. In Continental Casualty Co. v. Erion, 1933, 186 Ark. 1122, at page 1130, 57 S.W.2d 1025, at page 1028, the court said:

"In order for any conduct of a principal with respect to the agent, or of the agent, known or which ought to have been known, to the principal, so as to bind the former for the latter's act as done within the apparent scope of the agent's powers, such conduct must have been of that character as would justify the reasonable belief of the agent's authority, and that those dealing with the agent knew of the conduct of the principal or of the agent and relied upon it. The rule is thus stated at page 574, section 213, 2 C.J.: 'It is essential to the application of the above general rule (as to apparent authority) that two important facts be clearly established: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.' "

See also Central Surety & Ins. Corp. v. O. & S. Wholesale Co., Inc., 1937, 193 Ark. 523, 101 S.W.2d 167; General Motors Acceptance Corp. v. Salter, 1927, 172 Ark. 691, 290 S.W. 584.

In ascertaining whether an agent has apparent authority to engage in given conduct, it must be recognized as a corollary to the rule just quoted that a serious burden is on anyone dealing with an agent to determine his authority. In Latham v. First Nat. Bank of Fort Smith, 1909, 92 Ark. 315, at page 320, 122 S.W. 992, at page 993, the court said:

"A principal is not bound by the acts and declarations of an agent beyond the scope of his authority. A person dealing with an agent is bound to ascertain the nature and extent of his authority. No one has the right to trust to the mere presumption of authority, nor to the mere assumption of authority by the agent. City Elec. St. Ry. Co. v. First Nat. Exch. Bank, 62 Ark. 33, 40, 34 S.W. 89, 31 L.R.A. 535."

Furthermore, the plaintiff has the burden of proving the agent's real or apparent authority. American Nat. Ins. Co. v. Laird, Ark.1958, 311 S.W.2d 313, and cases cited.

There is no question, however, under the language of the premium receipt that the company held its soliciting agent out as possessing authority to advise on insurance matters. Neither can there be any serious question that the plaintiffs, having been told in effect that no action need be taken by virtue of the change in occupancy, relied in good faith on that representation and had every reason to believe that the agent's representation was not only correct but was within his authority. His representation was determinable actuarially as a matter of fact. It was the kind of fact peculiarly within the knowledge of those engaged in the specialized business of rate making and insurance, and it was

a matter which a layman is wholly unqualified to determine for himself. When the insurance company holds its agent out as being qualified as an "insurance consultant," a policyholder cannot be required to treat the agent as incompetent to advise him on insurance matters and to ascertain from a rate-making bureau whether his change in occupancy increases the hazard on the insured premises. Neither is he required to look further to determine the agent's authority; that is established by the company's own words and that is enough.

■ Thus, whether the agent's authority is regarded as actual or apparent, the company must be bound by this particular representation and is estopped to plead the increase in hazard as a suspension of the insurance. The court does not hold that a soliciting agent may waive a clause in the policy or misrepresent one of its provisions and thus bind the company. The agent may not bind the company by agreeing to an extention of the policy after a lapse, American Ins. Co. v. Hornbarger, 1908, 85 Ark. 337, 108 S.W. 213; by waiving a suspension or forfeiture clause, Holland v. Interstate Fire Ins. Co., supra; or by misrepresenting a clause in the policy, American Nat. Ins. Co. v. Laird, supra. Had the agent here attempted to do any of these things, the defendant could not be held liable. But the court's holding is limited to the proposition that the representations or misrepresentations of a soliciting agent as to a fact outside of the policy and not in conflict therewith, if made within his actual or apparent authority, are binding upon his principal. Such are the facts in this case, and accordingly the judgment of September 19, 1958, must be vacated and set aside. Judgment for plaintiffs should be entered for $3,000, the face amount of the policy, together with statutory penalty of 12 percent; interest on the $3,000 at 6 percent from February 3, 1958, to date; costs, and a reasonable attorney's fee. The court finds that under all the circumstances of this case and considering the hearings, deposi-tions, and briefs, that a reasonable attorney's fee for the plaintiffs' attorney would be $750.

A judgment in accordance with the above is being entered today.