H. P. JACKSON, Billie Phillips and Claude Phillips, Plaintiffs,

v.

M. F. A. MUTUAL INSURANCE COMPANY, a corporation, Defendant.

Civ. A. No. 432.

United States District Court
W. D. Arkansas,
Harrison Division.

Jan 7, 1959

No appearance for plaintiffs.

Crouch, Jones & Blair, Springdale, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

The motion of defendant for a new trial has been considered along with brief in support thereof. The case was originally tried on September 11, 1958, to the court sitting without a jury, and on September 19 formal findings of fact and conclusions of law were filed and judgment for the defendant entered thereon. Jackson v. M. F. A. Mutual Ins. Co., D.C., 165 F.Supp. 388.

In due course the plaintiffs moved for a partial new trial, and all parties submitted briefs on the questions involved. The plaintiffs' motion for partial new trial was granted, and on November 24, 1958, a second hearing was held. On December 1, 1958, the court filed its second opinion, D.C., 169 F.Supp. 633, and in accordance therewith entered judgment on the same day in favor of the plaintiffs for the face amount of the policy, together with interest and the statutory penalty and an attorney's fee. The facts as developed at the hearings are outlined in the findings of fact and in the court's opinion of December 1, and there appears to be no need to review

them upon this motion. Counsel who represented plaintiffs at both hearings is now deceased. The plaintiffs have been adequately notified of the defendant's motion but had not secured new counsel at the time the motion of defendant was considered.

■ The defendant first objects to certain findings of fact made by the court. It disputes the finding that plaintiffs' lessee was to take possession of the insured property on March 27, 1957, and cites testimony that the lease agreement was "to take effect" on April 15, 1957. Regardless of the rights as conveyed by the lease agreement itself, the plaintiff, H. P. Jackson, and the lessee, John Holland, both testified that Holland took possession on or about March 27, 1957, notwithstanding that the effective date of the lease was April 15. There is no direct evidence to the contrary, and the court accepted the testimony of both Holland and Jackson regarding the date of possession.

The defendant also contends that the court should have accepted the testimony of Eugene Pinkley rather than the testimony of H. P. Jackson, one of the plaintiffs, regarding the conversation in March 1957 as to the change in occupancy. Specifically the defendant contends that there is no foundation for the court's statement in its opinion of December 1 that Pinkley remembers little of this conversation. A part of the testimony of Mr. Pinkley, as given at the original trial, is as follows:

"Q. Would you state the nature of the discussion? A. *The best I remember*, Mr. Jackson said they were on a deal to lease it to a manufacturing company and if the deal went through would it change the premium or anything. And I told him "Yes it would change it some, I didn't know how much." At that time they had not moved—at that time the occupancy of the building had not been changed.

"Q. Before the fire and subsequent to this conversation did you ever have any other discussion or conversation with the plaintiffs in this case concerning this use and occupancy? A. No, sir, *not that I remember of*.

"Q. Did you ever furnish to M. F. A. Mutual Insurance Company a notice of this change in occupancy? A. No.

"Q. Mr. Pinkley, did you ever yourself have actual notice of this change in use and occupancy? A. Well, I knew it actually from reading the paper and I knew they moved in there, but so far as the insurance angle of it *I didn't think anything of it*." (Emphasis added.)

After seeing and hearing the witnesses, the court believed and still believes it to be a fact that Pinkley either did not remember the conversation or that he was being extremely evasive. Therefore, the testimony of the plaintiff, H. P. Jackson, was accepted as true.

Finally, the defendant objects to the court's finding that "shortly after the renewal premium was paid by Jackson, he received in the mail a premium receipt." The objection appears to be that the word "shortly" is not a definite time. By the defendant's calculation the premium receipt was received by the plaintiff, H. P. Jackson, no sooner than 17 days after the premium was paid. This calculation appears to be approximately correct, but the objection to the court's terminology does not appear material. The record speaks for itself, and while the calculations of the defendant in its brief appear to be correct, there does not appear to be any reason for granting a new trial on this basis.

■ The second point relied upon by the defendant is that it was surprised at the second trial by the introduction of certain matters to which no issues had been formulated. The defendant objects on the ground that the court's decision of December 1 is based upon a determination of apparent authority and upon the introduction into evidence of the premium receipt received by H. P. Jackson (plaintiffs' Exhibit No. 8). It is true

that the issue of apparent authority was not specifically pleaded in the complaint. However, at the trial on November 24, when the premium receipt was introduced during the testimony of the plaintiff, H. P. Jackson, counsel for defendant made no objection on any ground:

"Q. Is that the receipt that was sent to you by the M. F. A. Insurance Company? A. Yes, sir.

"Mr. Wilson: The plaintiff offers this fire premium insurance receipt as Plaintiff's Exhibit No. 8.

Plaintiff's Exhibit No. 8 received in evidence.

"Mr. Wilson: No further questions.

"The Court: Any questions?

"Mr. Crouch: No questions, Your Honor."

Rule 15(b), F.R.Civ.P., 28 U.S.C.A., provides in part:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."

Had the defendant at the time of introduction of the premium receipt objected or had the defendant at that time requested a continuance in order to meet the new evidence, the court would have had an opportunity to consider the objection on motion and to have ruled on it, but no objection was made at that time, and the court does not feel that the case should be carried on indefinitely when an adequate opportunity to present and object to evidence has been twice presented to both parties. Moreover, one of the briefs of the plaintiffs submitted prior to the trial on November 24, a copy of which was furnished to the defendant's counsel, expressly cites and quotes the language of the premium receipt, and the court in its original findings of fact of September 19 discussed the issue of apparent authority briefly. It is difficult to accept the claim of surprise when the issue of apparent authority has previously been discussed in the case—rightly or wrongly—and when prior to the trial the defendant had notice of the existence of such evidence and it was discussed in the plaintiffs' brief. Considering these facts, together with the failure of the defendant to object at the trial to the admissibility of the premium receipt, the court does not feel that the alleged surprise is well founded, or, if well based, is timely claimed.

The defendant's third argument for new trial is that it should be permitted now to assert a counterclaim for a proper premium charge for the increased risk, which it is forced to take by virtue of the judgment of this court. Were the defendant to recover such premiums, the plaintiffs could not recover the amount sued for and would not, therefore, be entitled to the statutory penalty and attorney's fee. Although the defendant implies that this is an issue available to it for the first time since the admission of the premium receipt used to establish in part the agent's apparent authority, the fact is that it could have counterclaimed for additional premiums at any time prior to either the original trial or the trial on rehearing. Apparently the defendant would have been entitled to counterclaim and recover additional premiums regardless of the theory upon which the plaintiffs recovered, but it did not do so. Furthermore, the defendant did not object, as pointed out above, to the admission of the evidence which it now claims gives it a right to counterclaim. Neither did the defendant ask for a continuance at the time such evidence was admitted. The defendant cites no authority to suggest that the court should have deducted or should now deduct the additional premiums claimed by the defendant because of the increase in risk in view of the fact

that no counterclaim has been filed. Under these circumstances the court feels that the defendant is not timely in seeking, after two hearings have been held and many briefs submitted, to present a counterclaim.

■ The defendant's fourth point is that the court failed to resolve ambiguity in the testimony against the party bearing the burden of proof. This point is based in part upon the ambiguity in the language of the agent Pinkley in advising the plaintiffs that he would "take care of" any changes that might come up in the coverage. The defendant in its brief argues that this should be interpreted as an attempted waiver or as a promise to take care of the necessary policy change when and if a change in occupancy occurred. However, the interpretation that a judge might put on the language used by the agent Pinkley had he been a policyholder is not the controlling question here. The question is rather what interpretation could a reasonable man place upon such language and what interpretation did the plaintiff Jackson in fact place upon such language. The court has found that a reasonable person would be entitled to take this language as a representation that the proposed change in use and occupancy of the insured premises did not increase the hazard, and that in fact Jackson and his co-plaintiffs accepted and relied upon that language and their reasonable interpretation thereof. Furthermore, the court has accepted the testimony of the plaintiff, H. P. Jackson, that the change in use and occupancy had taken place at the time of this conversation. The interpretation urged by the defendant is that Pinkley's representation could have meant "if and when you tell me that the change in use and occupancy is to take place and when [sic], I will take care of the necessary policy change." This is an unacceptable interpretation since according to the court's finding and belief under the testimony, the change in occupancy had already taken place or was in the process of taking place. The defendant also argues

that where an oral statement is ambiguous that "it is only just" that such statement be construed against the party carrying the burden of proof. If, of course, the trier of fact is unable to give more weight to one construction than another, the party with the burden of proof must fail, but it is not the rule that a trier of fact, whether judge or jury, must accept one of two reasonable constructions of testimony that the trier does not in fact believe. The court has accepted the construction that was evidently placed upon this language and certainly could have reasonably been placed upon this language by the plaintiffs, and no authority is cited for the proposition that the trier of fact must accept an interpretation he does not believe in order to resolve the issue against the party having the burden of proof. Cf. Wigmore, Evidence, Sec. 2498. The language of the agent Pinkley that he would take care of any changes that might come up is susceptible to the interpretation that the change in use and occupancy, or the proposed change in the use and occupancy, did not increase the hazard, and the plaintiffs are entitled to the benefit of that interpretation even though other reasonable persons might have made a different one. The court is, therefore, unable to accept the defendant's fourth point for new trial.

■ For its fifth point the defendant argues that the court failed to apply the proper law and applied conflicting rules of law. Under this point the defendant contends that since the premium receipt (which made clear the apparent authority of the agent to make the representations made here) was not received by the plaintiffs until at least 17 days after the representation was made, the plaintiffs had no right, at the time the representation was made, to accept the apparent authority of the agent. The defendant is correct in its statement that there is no evidence that discloses that the plaintiffs knew of the premium receipt at the time they were dealing with the agent. Whatever may have been the rights of the plaintiffs to rely upon the

representation of the agent prior to the time they received the premium receipt, they certainly had every right from that time forward until after the time of loss to put every confidence in the representations of the defendant's agent, Pinkley. The court did not attempt to make any finding or conclusion of law as to the plaintiffs' right to accept the agent's representations at the moment they were made. However, there is considerable basis for any layman to accept factual representations made by an authorized insurance agent which do not on their face show a conflict with the policy. Regardless, however, of the right of the plaintiffs to accept Pinkley's representations at the time they were made, they certainly had every reason for confidence in those representations after they received the premium receipt which boasted of the agent's qualifications. If they were lax in accepting the representations on March 26 or March 27, they were certainly led to believe after that time and before the loss that those representations would be relied upon. It, therefore, does not appear material that the premium receipt announcing the agent's qualifications and authority to advise and consult on all insurance matters was received at least 17 days after the crucial representations were made by the agent.

■ Under the same point the defendant argues that there is no evidence to show that Jackson or any of the other plaintiffs relied upon the language in the premium receipt. It is, of course, true that ordinary men in the pursuit of their everyday affairs do not usually accept any one factor to be set aside and used as the sole basis for their decisions. In all probability, persons do not ordinarily even go so far as to verbalize their decisions or to make them in the forms of conscious, logical propositions. However, the language in the premium receipt certainly is calculated to induce reliance upon the agent's representations, and that is one factor, probably along with many others, upon which the plaintiffs were entitled to rely. The court has accepted the testimony of H. P. Jackson

that he did rely upon the representations of the agent, and has found as a fact under all the testimony of the case that Jackson and his co-plaintiffs believed in the authority of the agent to act as he did. The court is, of course, unable to say that Jackson relied explicitly or entirely upon any one fact, but he did rely upon something in his belief that the agent Pinkley had authority to make the representation made here, and it is a fair inference that he relied upon those facts which reasonable men could accept and use in the ordinary determinations of their business affairs.

The fact that the language in the premium receipt did not purport to give the agent authority to control the validity of the policy is not relevant here because the court has found that the agent's representations did not purport to change the policy language but instead purported to say that there was no increase in risk; at the very least the plaintiffs could have accepted the agent's language as so meaning.

■ The defendant then argues that inasmuch as a soliciting agent cannot bind an insurer by a waiver, a soliciting agent cannot bind the insurer by an estoppel. This is an accurate statement of the law, and was accepted and set forth in both the opinion of the court and its prior findings of fact and conclusions of law. It is clear, as the defendant states, that a soliciting agent cannot keep a policy in effect by estopping the insurer, but this statement is correct only so far as it goes because it overlooks the rule of apparent authority. Whether an agent is a soliciting agent or a general agent is no longer an issue for consideration if, in fact, the agent has the apparent authority to act or speak as he does. Since the court has found the existence of apparent authority on the part of the agent Pinkley to make the representation made to the plaintiffs here, his statements, whether characterized as a waiver or an estoppel, can and do bind his principal. The defendant properly points out the distinction between waiver and estoppel, but that

distinction is not material here since the court agrees with the conclusion of the defendant that, absent apparent authority, a soliciting agent can neither bind the insurer by waiver or estoppel.

The defendant also says that an implied representation of fact even as to matters outside the policy terms would not bind the insurer, citing National Union Fire Ins. Co. v. School District No. 55, 1916, 122 Ark. 179, 182 S.W. 547, L.R.A.1916D, 238. In that case, one Wynne, who was a soliciting agent for the defendant insurance company, took the application of the plaintiff and the payment of the first premium but never forwarded either to the defendant company, and no policy was ever issued. The defendant urges that "there was clearly at least an implied representation on the part of the agent that he would send the application and premium to the insurer. This is clearly outside the terms of the policy and clearly an estoppel situation * * *." However, the issue determined by the court in that case was not the issue presented here. The court at pages 182–183 of 122 Ark., at page 548 of 182 S.W. said:

> "The only issue presented by this appeal is whether or not an insurance company is liable for the negligence of its agent in failing to send to the company an application for insurance, where the only authority of the agent is to solicit applications for insurance, to deliver policies when issued, and to receive and receipt for initial premiums."

Although some of the plaintiffs' arguments in their several briefs to the court were based upon a contention that the company is liable for the negligence of the agent in failing to forward information to the company, the court did not accept that contention, and its decision was based upon an entirely different proposition. The National Union Fire Ins. Co. case, supra, cannot be accepted as authority for the defendant's proposition that an agent with apparent or real authority cannot bind his principal by representations not conflicting with the terms of the policy itself

The defendant also correctly asserts that no agent, whether a general or soliciting agent, could make representations which operate to "extend the coverages" of a written policy. The defendant then concludes that the estoppel found by the court operates to extend the coverage and, therefore, is in conflict with this rule. If the broad sweep of the defendant's interpretation of this rule were applied to insurance contracts, it would, of course, eliminate the doctrine of waiver and estoppel altogether. Certainly it is true that no agent could agree that the policy covered items of property or other forms of risk which the policy did not specify; nor could the agent increase the amount of indemnity payable or otherwise vary any material term of the policy, but to some extent any application of the doctrine of waiver or estoppel "extends the coverage" in the sense that the defendant chooses to use that phrase. If the defendant's usage of that phrase were to be accepted, the doctrine of waiver and estoppel as applied to insurance contracts would have to be eliminated. In American Nat. Ins. Co. v. Hale, 1927, 172 Ark. 958, at page 963, 291 S.W. 82, 83, the court, quoting American Nat. Ins. Co. v. Otis, 122 Ark. 219, 183 S.W. 183, L.R.A.1916E, 875, said:

> " 'This court has often held that the doctrine of waiver and estoppel applies to insurance contracts, and that these principles will be liberally applied, when it is necessary to prevent injustice and fraud being perpetrated by insurance companies upon their policyholders, when the latter have been misled or imposed upon by the agents of such companies.'
>
> "We have held that the general rule, above stated, of waiver and estoppel applies to knowledge acquired by soliciting agents."

It is doubtful whether the last quoted paragraph, absent apparent authority, is still accepted by the Supreme Court of Arkansas as an accurate state-

ment of the law in view of the holdings in Sadler v. Firemen's Fund Ins. Co., 1932, 185 Ark. 480, 47 S.W.2d 1086, and the line of cases following that holding such as Holland v. Interstate Fire Ins. Co., Ark.1958, 316 S.W.2d 707. However, the statement that waiver and estoppel apply to insurance contracts remains an accurate statement of the Arkansas law, and the court feels that a failure to apply the law of waiver or estoppel in this instance would not only result in an injustice but would also constitute a disregard of the applicable Arkansas law. If the coverage is extended by the application of the doctrine of estoppel in this case, it is no greater extension than the application of that doctrine in the many cases decided by the Supreme Court of Arkansas. However, the court does not feel that the application of estoppel in this instance in anywise operates to "extend the coverage" as that term is ordinarily used.

Finally, under its fifth point the defendant argues that imputed knowledge operates on the same principle as estoppel, and consequently if knowledge of the agent will not bind the insurer, there is no basis on which it can be said that the actions of a soliciting agent can estop the insurer. This argument, however, assumes that the estoppel in this case arises from the knowledge of the agent Pinkley that the use and occupancy had changed to increase the hazard. That, of course, is not the basis for the court's finding of estoppel. The argument also ignores the application of the rule of apparent authority. It is difficult to conceive of situations in which a soliciting agent might have apparent authority to "impute" his knowledge to the insurer, and in this case he did not have such apparent authority. He did, however, have apparent authority, if not real authority, to make representations that a change in occupancy in the insured premises was or was not an increase in risk. To the extent that an imputation of an agent's knowledge is based upon his relationship with the insurer, imputed knowledge does rest upon the same principles as

estoppel, but in the case of estoppel there is the additional consideration of whether or not the agent had apparent authority to make the statements he made. In this case the court has found that he did have such apparent authority, and to that extent an estoppel may arise even where the agent's knowledge could not be imputed to the principal.

The defendant's sixth point is that the representation made by the agent was not a representation outside the terms of the policy sued upon. The defendant contends that in order to make a representation as to whether a particular increase in hazard would avoid a particular policy, "it would be necessary to render an interpretation of law as to whether or not the increased hazard was substantial enough to avoid the policy." As the court pointed out in its opinion of December 1, the increase in hazard is a matter actuarially determinable with a high degree of accuracy. It is true, as the defendant points out, that the agent here is not shown to have any qualifications as an actuary, but considering the representations made by the company itself on the premium receipt and the surrounding circumstances, certainly a layman could well accept the agent's representation or implied representation that there was no increase in hazard. Of course, if the increase in hazard is de minimus—which it was not here—the company could not avoid the policy, but the court does not feel that the agent's representations purported to be or should have been read by the plaintiffs as legal advice that the increase was not substantial. Furthermore, the basis for holding, in accordance with the general rule, that representations which are interpretations of law or which are interpretations of policy, are not binding on the insurer is that such representations are not made within the scope or apparent scope of the agent's authority. See Miller v. Illinois Bankers Life Ass'n, 1919, 138 Ark. 442, at 448, 212 S.W. 310, 7 A.L.R. 378. If there was an element here, as the defendant suggests, of interpretation of law, it was nevertheless

so well disguised as to remain within the apparent scope of the agent's authority. The plaintiffs were entitled to believe, and the court has found that they did believe, that the representation made by the agent was a determination based upon the agent's understanding of rates and actuarial matters which were things peculiarly within the competence and apparent authority of the agent to advise on insurance matters. The court does not feel that the agent's representation was an interpretation of law, but if there was an element of interpretation of law contained in the agent's representation, the court feels that, in this particular case, it was well within the apparent authority of the agent to make such a representation.

 The defendant then contends that there is no direct Arkansas authority, notwithstanding Miller v. Illinois Bankers Life Ass'n, supra, for the proposition that a representation of fact outside the policy has any different legal effect than a representation as to a term of the policy itself. The court cannot agree with that conclusion, but if accepted, it eliminates any further concern as to whether the representation of the defendant's agent was a representation of law or a representation of fact. The agent's representation here was substantially a representation of fact made with apparent authority, and as such it estops the defendant from asserting a contrary proposition. In other words, the agent cannot with apparent authority represent that there is no increased hazard and, at the same time, leave available to the principal the contention that the hazard was in fact substantially increased.

In the seventh and final argument submitted by the defendant, it urges that the court should amend its findings and accept the testimony of the agent, Eugene Pinkley, as opposed to the testimony of the plaintiff, H. P. Jackson. In making this argument, the defendant points out that Jackson is a party in interest and that Pinkley is not only not a party in interest but had severed his

connection with the defendant insurance company sometime prior to the original hearing in the case. The defendant sets forth some of the testimony of H. P. Jackson which it contends is conflicting. The court has reviewed that testimony as set forth in the defendant's brief. Some of the questions and some of the answers may be ambiguous, but the record does not show any effort on the part of H. P. Jackson to falsify or to evade, and it is doubtful whether there is any actual conflict in the Jackson testimony itself. The court observed both Jackson and the agent Pinkley in the first hearing, and further observed Jackson in his testimony in the second hearing. Although Jackson is a party in interest, the court feels that he more than sustained his burden of proof, and further that he was a credible and reliable witness. A review of the testimony set forth in the defendant's brief does not convince the court otherwise. The defendant says that testimony of the agent does not disclose the many inconsistencies prevalent in the testimony of plaintiff, H. P. Jackson, and that, therefore, Jackson's testimony cannot constitute a preponderance of the evidence. Preponderance of the evidence, of course, does not relate to the number of witnesses, and is not determined even by inconsistencies of testimony within itself, although such inconsistencies are properly considered by a trier of fact in determining the credibility of witnesses. The court accepts and believes the testimony of H. P. Jackson. To the extent that the testimony of the agent is conflicting, the version rendered by Jackson prevails. It may be added that the court does not find the inconsistencies in Jackson's testimony referred to by defendant.

This case, since the original trial, has been reconsidered twice by this court, first upon the plaintiffs' motion for a new trial, and second upon the defendant's motion for a new trial. Oral testimony has twice been taken before the court, a good part of which was transcribed by the defendant for the court's benefit and made available to the court in its consid-

eration of this motion. In addition several depositions were taken by the parties and filed with the court. Further, some seven or eight briefs and memoranda of authority have been submitted. In reviewing this case the court has renewed its consideration of the parties' briefs and of all the evidence. The court is convinced that justice has been accomplished, and that the application of the Arkansas law has been in accordance with the decisions of the Supreme Court of Arkansas. The briefs on the part of the defendant have been able and comprehensive, but the court does not feel under the facts of this case and the law of Arkansas that the defendant is entitled to prevail or to a new trial.

The defendant's motion for a new trial under Rule 59(a) should, therefore, be overruled, and an order to that effect is being entered today.